BOISE CITY IRR. & LAND CO. v. CLARK et al., County Com'rs.

(Circuit Court of Appeals, Ninth Circuit.   May 31, 1904.)

No. 999.

1. APPEAL—DECISIONS REVIEWABLE—DECREE ADJUDICATING PRINCIPLE.

A decree affirming an order of a municipal body fixing maximum rates to be charged by an irrigation company for water furnished consumers during a certain year may be reviewed on appeal, although the year has expired, where, under the statute, such rate continues until changed, or where some question of law is involved, the decision of which may affect the future action of the authorities.

2. IRRIGATION COMPANIES—STATE REGULATION OF CHARGES—CONSTITUTIONALITY OF MAXIMUM RATES.

Under the Constitution of Idaho, which declares the use of all waters appropriated for sale, rental, or distribution to be a public use, and the right to collect compensation therefor a franchise, which cannot be exercised except by authority of, and in the manner prescribed by, law, and which authorizes the Legislature to provide, as it has done, for the fixing of maximum rates to be charged for water so sold, an irrigation company appropriating water for sale has no authority to make a distinction between its consumers, and, while supplying some with water under private contracts at low rates, attack the validity of maximum rates fixed by the county commissioners under the statute, on the ground that, as applied to its other consumers, they will not yield a reasonable return on its investment, but will amount to a taking of its property without compensation.   In determining the reasonableness of such rates, they must be considered as applicable to all its consumers.

3. SAME.

A maximum rate to be charged by an irrigation company for water furnished to consumers, fixed by county commissioners as provided by statute, is not unconstitutional, as depriving the company of its property without compensation, because it will not produce sufficient revenue above expenses and fixed charges to pay a reasonable income on the money invested by the company, where its plant was constructed on a larger scale and at a greater expense than necessary to supply its present customers, and was intended to supply a greater number than it has as yet obtained.

Appeal from the Circuit Court of the United States for the Central Division of the District of Idaho.

Fremont Wood and Edgar Wilson, for appellant.

Alfred A. Fraser, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. The appellant is a New Jersey corporation, and brought the present suit in the court below against the county commissioners of Ada county, Idaho, sitting as a board of water commissioners, to obtain a decree annulling an order made by the commission fixing a maximum rate to be charged by the complainant for water delivered from its canal system to consumers thereof for the irrigating season of the year 1901. The provisions of the Constitution and statutes of the state of Idaho bearing upon the question are as follows:

Section 1 of article 15 of the state Constitution declares:

"The use of all waters now appropriated, or that may hereafter be appropriated for sale, rental, or distribution; also of all waters originally appropriated for private use, but which after such appropriation has heretofore been, or may hereafter be sold, rented, or distributed, is hereby declared to be a public use, and subject to the regulation and control of the state in the manner prescribed by law."

Section 2 of the same article of the Constitution provides that:

"The right to collect tolls for compensation for the use of water supplied to any county, city, or town, or water district, or the inhabitants thereof, is a franchise, and cannot be exercised except by the authority of or in the manner prescribed by law."

Section 6 of the same article declares that:

"The Legislature shall provide by law the manner in which reasonable maximum rates may be established, to be charged for the use of water sold, rented, or distributed for any useful or beneficial purpose."

In pursuance of those provisions of the Constitution of the state, its Legislature enacted, in its Civil Code, as follows:

"Sec. 2579. Standard of Measurement of Water. A cubic foot of water per second of time shall be the legal standard for the measurement of water in this state."

"Sec. 2595. Duty of Owner of Canal to Keep Flow of Water. Every person, company or corporation owning or controlling any ditch, canal or conduit for the purpose of irrigation shall, during the time from April 1st to the 1st day of November of each year keep a flow of water therein, sufficient to the requirements of such persons as are properly entitled to the use of water therefrom: provided, however, that when the public streams or other natural water sources from which the water is obtained are too low and inadequate for that purpose, then such ditch, canal or conduit shall be kept with as full a flow of water therein as may be practicable, subject, however, to the rights of priority from the streams or other natural sources, as provided by law."

"Sec. 2596. Owner of Canal must Have Same Ready to Deliver, When. The owners or persons in control of any ditch, canal or conduit used for irrigation purposes shall maintain the same in good order and repair, ready to deliver water by the first of April in each year, and shall construct the necessary outlets in the banks of the ditches, canals or conduits for a proper delivery of water to persons having rights to the use of the water.

"Sec. 2597. Appointment of Water Master—His Duty. It shall be the duty of those owning or controlling any ditch, canal or conduit to appoint a superintendent, or water master, whose duty it shall be to measure the water from such ditch, canal or conduit through the outlets of those entitled thereto, according to his pro rata share, and no account or demand for the use of such

water during any time such superintendent or water master is not so employed is valid or collectible.

"Sec. 2598. Liability for Failure to Deliver Water. Any superintendent or any person having control or charge of the said ditch, canal or conduit, who shall willfully neglect or refuse to deliver water as in this chapter provided, and the owner or owners of such ditch, canal or conduit, shall be liable in damages to the person or persons deprived of the use of water to which he or they was or were entitled as herein provided.

"Sec. 2599. Water must be Furnished upon Demand. Any person, company or corporation owning or controlling any canal or irrigation works for the distribution of water under a sale or rental thereof, shall furnish water to any person or persons owning or controlling any land under such canal or irrigation works for the purpose of irrigating such land or for domestic purposes, upon a proper demand being made and reasonable security being given for the payment thereof: provided, that no person, company or corporation shall contract to deliver more water than such person, company or corporation has a title to by reason of having complied with the laws in regard to the appropriation of the public waters of this state.

"Sec. 2600. Manner of Distribution—Amount to be Used. Any person or persons owning or controlling land which has or has not been irrigated from any such canal, shall on or before January 1st of any year, inform the owner or person in control of such canal whether or not he desires the water from said canal for the irrigation of land during the succeeding season, stating also the quantity of water needed. In distributing water from any such canal, ditch or conduit during any season, preference shall be given to those applications for water for land irrigated from said canal the preceding season, and a surplus of water, if any there be, shall be distributed to the lands in the numerical order of the applications for it. But no demand for the purchase of a so-called 'perpetual water right,' or any contract fixing the annual charges or the quantity of waters to be used per acre shall be imposed as a condition precedent to the delivery of water annually, as provided in this chapter; but the consumer of water shall be the judge of the amount and the duty of the water required for the irrigation of his land, and the annual charges to be made and to be fixed under the further provisions of this chapter, shall hereafter be based upon the quantity of water delivered to consumers, and shall not in any case depend upon the number of acres irrigated by means of such amount of water delivered."

"Sec. 2605. Boards of Water Commissioners. The boards of county commissioners of the respective counties of this state are hereby created boards of water commissioners, with power to enforce the provisions of this chapter, and for the better discharge of their duties they shall have authority to make such other regulations to secure the equal and fair distribution of water in accordance with the rights of priority of appropriation as may in their judgment be needed in their respective counties: provided, such regulations shall not be in violation of any part of this chapter, or other laws of the state, but merely supplementary to and necessary to enforce the provisions of this chapter and general laws on the subject of irrigation."

"Sec. 2608. County Commissioners to Hear Applications. The county commissioners of each county now organized, and of each county to be hereafter organized in this state shall, at their regular session in January of each year and at such other sessions as they, in their discretion may deem proper, hear and consider all applications which may be made to them by any party or parties interested in either furnishing or delivering for compensation, or by any person or persons using or consuming water for irrigation or other beneficial purpose or purposes from any ditch, canal or conduit, the whole or any part of which shall be in such county, which application shall be supported by such affidavit as the applicant or applicants may present, showing reasonable cause for such board of county commissioners to proceed to fix a maximum rate of compensation for water thereafter delivered from such ditch, canal or conduit within such county: provided, that when any ditch, canal or conduit shall extend into two or more counties, the county commissioners of each of such counties shall fix the maximum rate for water used in that county."

131 F.—27

Sections 2609 and 2610 provide for the making of the order and the issuance and service of the notice bringing in all interested parties.

"Sec. 2611. May Adjourn Hearing—What Evidence to be Received—Attendance of Witnesses—Order of Board. Said board of commissioners may adjourn or postpone any hearing from time to time as may be found necessary; but when in session they shall hear and examine all legal testimony or proofs offered by any party interested as aforesaid, as well as concerning the original cost and present value of the works and structure of such ditch, canal or conduit, as well as the cost and expense of maintaining and operating the same, and all matters which may affect the establishment of reasonable maximum rates for water to be furnished and delivered therefrom, and they may issue subpœnas for witnesses which subpœnas shall be served in the same manner in which subpœnas are served in civil cases; and said board may also issue subpœnas for the production of all books and papers required before them. The district court of the proper county, or the judge thereof in vacation, may in case of refusal to obey the subpœnas of the board of county commissioners, compel obedience thereto, or punish for refusal to obey after hearing, as in cases of attachment for contempt of such district court. Upon hearing and considering all the evidence and facts and matters involved in the case, said board of county commissioners shall enter an order describing the ditch, canal or conduit, or other waterworks in question with sufficient certainty, and fixing a just and reasonable maximum rate of compensation for water thereafter delivered from such ditch or other waterworks as last aforesaid within the county in which said commissioners act; and such rate shall not be changed within one year from the time when such rates shall be so fixed: provided. that an appeal or writ of error shall lie in behalf of the proprietor of such works, or any person using or claiming to be entitled to use water therefrom, for review in the district court.

"Sec. 2612. In Fixing Rates, What to be Considered. In fixing rates at which water shall be furnished, the board of commissioners shall take into consideration the cost of the works, the expenses of keeping the same in repair, and all other conditions that affect the cost to deliver the same. Whenever it shall appear to the board of county commissioners from competent evidence that any consumer or consumers of water distributed through any ditch or canal, is or are entitled to the distribution or use of any water therefrom, at not to exceed a proportionate amount of the actual cost of maintenance and operation of said ditch or canal, they shall upon request of such person or persons so entitled, fix the rate per cubic foot per second to be charged to such consumer or consumers, for the current year."

Under the foregoing provisions of the Constitution and statutes of Idaho the commissioners acted in fixing the rate of which the appellant complains. It insists that the rate as so fixed is too low to admit of just compensation for the services rendered, and, indeed, amounts to a practical confiscation of the defendant's property, contrary to the provisions of the Constitution of the United States. The court below, upon consideration of the evidence introduced on the hearing, said that the "rate fixed is somewhat too low," but held that it would not be justified in annulling it.

It appears that the water in question was appropriated by the predecessors in interest of the appellant, under and in pursuance of the constitutional and statutory provisions of the state, from the Boise river, and conducted by a canal and its various branches through a portion of Ada county, and into a portion of Canyon county, of the state, and thence distributed to consumers for beneficial uses; about four-fifths of the construction, maintenance, and cost of the system being in Ada county, and one-fifth in the county of Canyon.

It is contended on the part of the appellees that, as the period for

which the rate in question was fixed has expired, the case has become but little, if any, more than a moot case; but the courts have entertained and decided such cases heretofore, partly because the rate, once fixed, continues in force until changed as provided by law, and partly because of the necessity or propriety of deciding some question of law presented which might serve to guide the municipal body when again called upon to act in the matter.

Prior to the enactment of the state statute making a cubic foot of water per second the legal standard for the measurement of water in Idaho, the appellant had furnished its consumers with water at $1.50 per acre, and afterwards at $75 per cubic foot per second, or $1.50 per inch; there being practically 50 miner's inches in a cubic foot of water. The income derivable under the order complained of was stated in the evidence on the part of the complainant at $29,869, and was accepted as correct by the court below; but it appears from the appellant's own evidence that it distributed water to 2,750 acres of land under so-called perpetual water rights, growing out of private contracts, 385 acres of which were furnished practically free, 580 acres at 15 cents an acre, and 600 acres at 65 cents an acre. These 1,565 of the 2,750 acres would, at the rate fixed by the board of commissioners, yield the appellant $2,014.56, of which it makes no account, to say nothing of the yield at the same rate from the remaining 1,185 acres of the 2,750 acres. All of these 2,750 acres supplied with the water in question by the appellant should, in our opinion, be counted at the rate fixed by the order of the commissioners, in estimating the amount derivable therefrom by the appellant; any and all contracts made by it or its predecessors in interest to the contrary notwithstanding. If 1,565 acres can be supplied under private contract at from nothing to 65 cents an acre, and the balance of the land supplied by the system be made to pay a rate which will yield fair interest on the actual value of the entire property, then, clearly, any other number of acres, less than the whole, can be likewise supplied under private agreement, and thus practically the entire burden of supplying the necessary revenue be placed upon a comparatively small part of the land supplied. Nothing can be clearer than that the supplying of any portion of the land under the system at anything less than the regularly established rate adds to the burden of the other land which is thereby called upon to make good "just compensation" for the use of the property.

Where any distinction between the consumers of the waters in question is authorized to be made, we are unable to understand. Those waters were appropriated from a public stream of the state, for sale, rental, and distribution, under and by virtue of the Constitution of the state, declaring, in express terms, that the use of all such waters so appropriated is a public use, and subject to regulation and control of the state in the manner prescribed by law; that the Legislature of the state shall provide by law the manner in which maximum rates may be established, to be charged for the use of water sold, rented, or distributed for any useful or beneficial purpose; and that the right to collect compensation for the use of any such water supplied to any county, city, or town, or water district, or to the inhabitants thereof, "is a franchise, and cannot

be exercised except by the authority of or in the manner prescribed by law."

The case of San Diego Land & Town Company v. City of National City (C. C.) 74 Fed. 79, presented the question, among others, whether that company had the legal right to demand and receive a sum of money in addition to the annual rates it was authorized to charge, as a condition upon which it would furnish water appropriated by it under similar provisions of the Constitution and laws of the state of California, to the persons for whose use the appropriation was made. The thing for which that company demanded a sum of money in addition to the annual rates it was by law authorized to charge it designated as a "water right," and it was there said:

"It does not change the essence of the thing for which the complainant demands a sum of money to call it a 'water right,' or to say, as it does, that the charge is imposed for the purpose of reimbursing complainant in part for the outlay to which it has been subjected. It is demanding a sum of money for doing what the Constitution and laws of California authorized it to appropriate water within its limits, conferred upon it the great power of eminent domain, and the franchise to distribute and sell the water so appropriated, not only to those needing it for purposes of irrigation, but also to the cities and towns, and their inhabitants, within its flow, for which it was given the right to charge rates to be established by law, and nothing else. No authority can anywhere be found for any charge for the so-called water right. The state permitted the water in question to be appropriated for distribution and sale for purposes of irrigation, and for domestic and other beneficial uses; conferring upon the appropriator the great powers mentioned, and compensating it for its outlay by the fixed annual rates. The complainant was not obliged to avail itself of the offer of the state, but, choosing, as it did, to accept the benefits conferred by the Constitution and laws of California, it accepted them, charged with the corresponding burden. Appropriating, as it did, the water in question for distribution and sale, it thereupon became, according to the express declaration of the Constitution, charged with a public use. 'Whenever,' said the Supreme Court of California in McCrary v. Beaudry, 67 Cal. 120, 121, 7 Pac. 265, 'water is appropriated for distribution and sale, the public has a right to use it; that is, each member of the community, by paying the rate fixed for supplying it, has a right to use a reasonable quantity of it in a reasonable manner. Water appropriated for distribution and sale is ipso facto devoted to a public use, which is inconsistent with the right of the person so appropriating it to exercise the same control over it that he might have exercised if he had never so appropriated it.' "

The same views were expressed and amplified in the subsequent case of Lanning v. Osborne (C. C.) 76 Fed. 319, and, in effect, find strong support in the very recent decision of the Supreme Court of the United States in the case of The County of Stanislaus, in the State of California, et al., Appellants, v. The San Joaquin & Kings River Canal & Irrigation Company, 192 U. S. 201, 24 Sup. Ct. 241, 48 L. Ed. 406, which involved, among other things, the question whether a water company incorporated under an act of the Legislature of the state of California enacted in 1862 (St. 1862, p. 540, c. 417), and providing that "every company organized as aforesaid shall have power, and the same is hereby granted * * * to establish, collect, and receive rates, water rents, or tolls which shall be subject to regulation by the board of supervisors of the county or counties in which the work is situated, but which shall not be reduced by the board of supervisors so low as to yield to the stockholders less than one and one half per cent. per month

upon the capital actually invested" (section 3, p. 541), constituted a contract between the state and the water company, which was protected by the Constitution of the United States. After citing various cases, the Supreme Court said:

"It is true that the cases cited involved questions of alleged contracts for exemption from taxation, in regard to which it has been said that no presumption exists in favor of a contract by a state to exempt lands from taxation, and that every reasonable doubt should be resolved against it. Statutes of California providing that the use of all water appropriated for sale, rental, or distribution should be a public use, and subject to public regulation and control, are valid. San Diego, etc., Co. v. National City, 174 U. S. 739 [19 Sup. Ct. 804, 43 L. Ed. 1154]. And companies formed for the purpose of furnishing water for irrigation purposes have been held, in that state, to be public municipal corporations, and the use of the water for the purposes mentioned a public use. See cases cited in Fallbrook Irrigation District v. Bradley, 164 U. S. 111, 139 [17 Sup. Ct. 56, 41 L. Ed. 369]. To regulate or establish rates for which water will be supplied is, in its nature, the execution of one of the powers of the state, and the right of the state so to do should not be regarded as parted with any sooner than the right of taxation should be so regarded, and the language of the alleged contract should in both cases be equally plain. Owensboro v. Owensboro Waterworks Company, 191 U. S. 358 [24 Sup. Ct. 82, 48 L. Ed. 217]. In our judgment, the language of the act of 1862 did not amount to a contract that the rates for the use of water should never be lowered below the amount provided for in that act."

Certainly, if an express provision in the charter of a company to the effect that the rates to be charged by it should never be reduced by the municipal body below a stated amount is void for the reason that it is an interference with the power of the state to regulate or establish rates for which such water shall be supplied, a fortiori such state power cannot be interfered with by any contract between such company and a private person, and a fortiori they also are void for precisely the same reason.

The court below, upon the evidence introduced, fixed the value of the property at the time of the service in question at $250,000, and the cost of maintenance of the plant for the year 1901 at $20,000. Some of the claims of the appellant bearing upon the value of the plant and the cost of maintenance are undoubtedly extravagant, and some of them are very indefinite and uncertain. If it be conceded that the amounts fixed by the court below in respect to these matters are too low, yet a large increase in both the value of the property and in the cost of the maintenance of the plant may be allowed, and still sufficient compensation be derivable under the order of the board of commissioners in question to answer the constitutional requirement, for the amount derivable from the 2,750 acres, at the established rate, is to be accounted for and counted, as above held. The rule by which the courts must be governed in such cases was stated by the Supreme Court in San Diego Land & Town Company v. City of National City, 174 U. S. 753, 19 Sup. Ct. 810, 43 L. Ed. 1154, in these words:

"That it was competent for the state of California to declare that the use of all water appropriated for sale, rental, or distribution should be a public use, and subject to public regulation and control, and that it could confer upon the proper municipal corporation power to fix the rates of compensation to be collected for the use of water supplied to any city, county, or town, or to the inhabitants thereof, is not disputed, and is not, as we think, to be doubted. It is equally clear that this power could not be exercised arbitrarily, and with-

out reference to what was just and reasonable as between the public and those who appropriated water and supplied it for general use, for the state cannot, by any of its agences, legislative, executive, or judicial, withhold from the owners of private property just compensation for its own use. That would be a deprivation of property without due process of law. Chicago, B. & Q. R. Co. v. City of Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979; Smyth v. Ames, 169 U. S. 466, 524, 18 Sup. Ct. 418, 42 L. Ed. 819. But it should also be remembered that the judiciary ought not to interfere with the collection of rates established under legislative sanction unless they are so plainly and palpably unreasonable as to make their enforcement equivalent to the taking of property for public use without such compensation as, under all the circumstances, is just both to the owner and to the public; that is, judicial interference should never occur unless the case presents, clearly and beyond all doubt, such a flagrant attack upon the rights of property under the guise of regulations as to compel the court to say that the rates prescribed will necessarily have the effect to deny just compensation for private property taken for the public use."

Moreover, it appears from the testimony of the manager of the appellant company, in answer to a question by its counsel as to why the property had not in the past been made to pay "fixed maintenance charges, interest upon its bonded indebtedness, and a reasonable interest upon the additional investment necessitated in the construction of the property," that:

"The main cause of the delay is the fact that the country has not settled up as fast as they expected. They have always expected that the amount of land put under irrigation would increase more rapidly, and so put it in shape that it would pay. Another point was the strong disposition on the part of the consumers against any increase of rate, manifested at different times; and the owners of the canal were averse to increasing the rate, in hopes that the amount of land under irrigation would increase, or the company [country] settle up faster."

"If a plant is built," said the Supreme Court in San Diego Land & Town Company v Jasper, 189 U. S. 439, 446, 23 Sup. Ct. 571, 47 L. Ed. 892, "for a larger area than it finds itself able to supply, or, apart from that, if it does not as yet have the customers contemplated, neither justice nor the Constitution requires that, say, two-thirds of the contemplated number should pay a full return."

The judgment is affirmed.