## SPRECKELS SUGAR CO. v. WICKARD, Secretary of Agriculture, (LOS ALAMITOS SUGAR CO. et al., Intervenors).

## HOLLY SUGAR CORPORATION v. SAME.

### Nos. 7916, 7925.

United States Court of Appeals for the District of Columbia.

Decided Nov. 18, 1941.

Mr. Roland C. Foerster, of San Francisco, Cal., pro hac vice, by special leave of Court, with whom Mr. Henry B. Weaver, Jr., of Washington, D. C., appeared on the brief and entered an appearance, for appellant in No. 7916.

Mr. Edwin Foster Blair, of New York City, pro hac vice, by special leave of Court, for appellant in No. 7925. Mr. Newell W. Ellison, of Washington, D. C., entered an appearance for appellant in No. 7925.

Mr. W. Carroll Hunter, Special Assistant to the Attorney General, with whom Messrs. John S. L. Yost, Special Assistant to the Attorney General, and John C. Bagwell, Principal Attorney, Department of Agriculture, of Washington, D. C., appeared on the brief, for appellee in No. 7916 and No. 7925.

Mr. Paul H. Ray, of Salt Lake City, Utah, with whom Mr. Ernest L. Wilkinson, of Washington, D. C., who entered an appearance, and Mr. Ashby D. Boyle, of Salt Lake City, Utah, appeared on the brief, for the intervenors The Amalgamated Sugar Company and Utah-Idaho Sugar Company, in No. 7916 and No. 7925.

Mr. Horace S. Whitman, of Washington, D. C., with whom Mr. Caldwell Martin, of Denver, Colo., appeared on the brief, entered an appearance for the intervenor The Great Western Sugar Company, in No. 7916 and No. 7925.

Mr. William H. Collins, of Washington, D. C., appeared on the brief of, and entered an appearance for, the intervenor Los Alamitos Sugar Company, in No. 7916 and No. 7925.

Mr. Irving Hale, Jr., of Denver, Colo., pro hac vice, by special leave of Court, with whom Mr. Robert Faulkner, of Washington, D. C., appeared on the brief and entered an appearance, for the intervenor American Crystal Sugar Company, in No. 7916 and No. 7925, waived oral argument.

No appearance was entered and no brief was filed for the intervenor Michigan Sugar Company.

Before GRONER, Chief Justice, and STEPHENS and RUTLEDGE, Associate Justices.

STEPHENS, Associate Justice.

These are appeals from a decision and order of the Secretary of Agriculture made May 9, 1941, by which marketing allotments for the domestic beet sugar area were made to processors of sugar from sugar beets. The appellants Holly Sugar Corporation and Spreckels Sugar Company,

allottees, seek to reverse the order. The appellee Secretary of Agriculture seeks an affirmance, as do the intervenors Great Western Sugar Company, Los Alamitos Sugar Company, Amalgamated Sugar Company, Utah-Idaho Sugar Company, American Crystal Sugar Company and Michigan Sugar Company, each of which is an allottee. The Great Western Sugar Company suggests also that the cases are moot. The decision and order of the Secretary were made under the Sugar Act of 1937, as amended.[1] The appeals and interventions are under § 205(b)–(f) of that Act.[2]

The cases arose as follows: On December 21, 1940, the Secretary of Agriculture, pursuant to § 201 of the Act, determined the amount of sugar needed to meet the requirements of consumers in the continental United States for the calendar year 1941. Then, as required by § 202, he prorated the determined amount on the statutory basis of 55.59% to the domestic sugar producing areas as a whole and 44.41% to the foreign sugar producing areas as a whole. Under the further mandate of § 202, he apportioned to the domestic beet sugar area 41.72% of the quota assigned to the domestic sugar producing areas as a whole. Finally, the Secretary made marketing allotments to the processors in the domestic beet sugar producing area, under the authorization of § 205(a) of the Act, as follows: That section provides:

"Whenever the Secretary finds that the allotment of any quota, or proration thereof, established for any area pursuant to the provisions of this chapter, is necessary to assure an orderly and adequate flow of sugar or liquid sugar in the channels of interstate or foreign commerce, or to prevent disorderly marketing or importation of sugar or liquid sugar, or to maintain a continuous and stable supply of sugar or liquid sugar, or to afford all interested persons an equitable opportunity to market sugar or liquid sugar within any area's quota, after such hearing and upon such notice as he may by regulations prescribe, he shall make allotments of such quota or proration thereof by allotting to persons who market or import sugar or liquid sugar, for such periods as he may designate, the quantities of sugar or liquid sugar which each such person may market in continental United States, the Territory of Hawaii, or Puerto Rico, or may import or bring into continental United States, for consumption therein. Allotments shall be made in such manner and in such amounts as to provide a fair, efficient, and equitable distribution of such quota or proration thereof, by taking into consideration the processings of sugar or liquid sugar from sugar beets or sugarcane to which proportionate shares,[3] determined pursuant to the provisions of subsection (b) of section 1132, pertained; the past marketings or importations of each such person; or the ability of such person to market or import that portion of such quota or proration thereof allotted to him. The Secretary may also, upon such hearing and notice as he may by regulations prescribe, revise or amend any such allotment upon the same basis as the initial allotment was made."

On January 14, 1941, the Secretary made a finding that allotment of the 1941 sugar quota for the domestic beet sugar area was necessary to prevent the disorderly marketing of such sugar and to afford all interested persons an equitable opportunity to market such sugar in the continental United States. On January 29 and 30, 1941, he held a public hearing at which evidence was received to enable him to make a fair, efficient and equitable dis-

---

[1] Act of September 1, 1937, c. 898, 50 Stat. 903–916, 7 U.S.C.A. §§ 1100–1183, as amended by the Act of June 25, 1940, c. 423, 54 Stat. 571, 7 U.S.C.A. § 1131, Act of October 10, 1940, c. 839, 54 Stat. 1092, 7 U.S.C.A. § 1111, Act of October 15, 1940, c. 887, 54 Stat. 1178, 7 U.S.C.A. §§ 1117, 1173, 1183.

[2] § 205(b)–(f) provides for an appeal to the United States Court of Appeals for the District of Columbia "By any applicant for an allotment whose application shall have been denied" or "By any person aggrieved by reason of any decision of the Secretary granting or revising any allotment made to him" (§ 205(b)), and provides that "Within thirty days after the filing of said appeal any interested person may intervene and participate in the proceedings had upon said appeal" (§ 205(d)). An interested person is "Any person who would be aggrieved or whose interests would be adversely affected by reversal or modification of the decision of the Secretary complained of . . . ." (§ 205(d)).

[3] "Proportionate shares" are the farm shares of the quantity of sugar beets required to be processed to enable the area to meet the quota of the sugar consumption requirements of the continental United States and to provide a normal carryover inventory. § 302(a)

tribution of the quota. On May 9, 1941, he made the allotment order which is the subject of these appeals. In arriving at the allotments the Secretary took into consideration as one factor the total "effective inventories" of all processors in the sugar beet area on January 1, 1941.[4] The sole question on the merits of the appeals is whether or not the Secretary had the right to consider this factor. The appellants contend that "effective inventories" of persons receiving allotments is not one of the standards or factors which the Secretary is required or permitted by the statute to take into consideration. The Secretary and the intervenors, on the other hand, assert that the statute, and particularly that part of § 205(a) which authorizes the Secretary to take into consideration in arriving at allotments "the processings of sugar . . . from sugar beets . . . to which proportionate shares . . . pertained," permits the consideration of "effective inventories."

But if these appeals are moot, as suggested by the intervenor Great Western Sugar Company, we cannot decide the question raised on the merits: The Secretary's order was made on May 9, 1941. The appeals were taken on May 28 and 29. On July 8, August 16 and August 29, the Secretary made supplemental orders increasing the allotments.[5] On September 20, 1941, the Secretary "found and determined that the allotment of the 1941 sugar quota for the domestic beet sugar area is no longer necessary to accomplish the purposes of the Act," and entered an order rescinding the allotment order of May 9, together with all supplements thereto (6 Fed.Reg. 4836). This order of rescission left all of the beet sugar processors to which allotments were made free to market sugar in 1941 without restriction. It is conceded that it is not likely that a new allotment will be made for this year. The Sugar Act of 1937 as originally passed was to expire by its own terms December 31, 1940, but by Act of October 15, 1940, 54 Stat. 1178, c. 887, its effectiveness was extended to December 31, 1941. It will expire at that time unless again extended, or unless re-enacted, by Congress.

█ Since the order appealed from has been rescinded, we are without power to grant the specific relief prayed for and the cases would therefore, under settled principles forbidding the Federal courts to decide abstract questions, appear to be moot. As the Supreme Court said in California v. San Pablo, etc., Railroad, 1893, 149 U.S. 308, 314, 13 S.Ct. 876, 37 L.Ed. 747, and reiterated in United States v. Hamburg-American Company, 1916, 239 U.S. 466, 475, 36 S.Ct. 212, 60 L.Ed. 387:

". . . The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it. When, in determining such rights, it becomes necessary to give an opinion upon a question of law, that opinion may have weight as a precedent for future decisions. But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it. No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court in this regard."

See also Lord v. Veazie, 1850, 8 How. 251, 12 L.Ed. 1067; Cheong Ah Moy v. United States, 1885, 113 U.S. 216, 5 S.Ct. 431, 28 L.Ed. 983; Mills v. Green, 1895, 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293; Jones v. Montague, 1904, 194 U.S. 147, 24 S.Ct. 611, 48 L.Ed. 913; Richardson v. McChesney, 1910, 218 U.S. 487, 31 S.Ct. 43, 54 L.Ed. 1121; Stearns v. Wood, 1915, 236 U.S. 75, 35 S.Ct. 229, 59 L.Ed. 475; Brownlow v. Schwartz, 1923, 261 U.S. 216, 43 S.Ct. 263, 67 L.Ed. 620.

It was, however, at the argument of the appeals, urged by the appellants, and not denied by the Secretary, that, since the Sugar Act might be extended or re-enacted, it is important that the question involved on the merits be decided; it was pointed out that although Congress provided for appeals from the orders of the Secretary under the Act, it is, because of the short term nature of the orders, practically im-

---

[4] By the "effective inventory" of a processor is meant sugar, processed from proportionate shares, actually on hand on January 1 of a given year, plus such sugar to be processed subsequent to that date from the sugar beet crop of the preceding year.

[5] These allotment increases resulted from the fact that the Secretary found it necessary to increase his determination of the amount of sugar needed to meet the requirements of consumers in the continental United States for 1941 and thus to increase the quotas.

possible to obtain a review. Therefore it was earnestly urged by the appellants—and but faintly, if at all, resisted by the Secretary—that the court should, for the guidance of processors and the Secretary, rule on the question whether "effective inventories" can be considered in arriving at allotments; and it was contended by the appellants that in respect of the question whether the cases are moot they parallel Gay Union Corporation v. Wallace, 1940, 71 App.D.C. 382, 112 F.2d 192. Therein we decided two appeals from a cane sugar allotment order of the Secretary of Agriculture under the Sugar Act of 1937, despite the fact that the order had become inoperative. The Secretary had made an allotment order on April 28, 1939. On May 15 appeals were taken. On September 11 the President, under powers granted in § 509 of the Act, by proclamation suspended the operation of Title II (sub-chapter 2), which embraces the quota provisions, thus rendering inoperative the allotment order. The appeals were argued on December 4. The Secretary contended that since the allotment order had been made inoperative—with the result of granting the appellants as great, if not greater, relief than any which could be afforded by an order of the court—the cases were moot. On December 26, 1939, while the appeals were still under consideration, the President revoked his suspension of Title II. The allotment order expired of its own terms on December 31. But the Sugar Act itself was in effect until December 31, 1940, and on January 3, 1940, the Secretary reinstated the rules and regulations governing hearings to adduce evidence upon which to base allotment orders; and on January 13 he fixed the 1940 quotas. This court said—deciding the appeals on February 26, 1940—that under these circumstances "it seems not unlikely that the order complained of may be replaced by another of substantially similar import and that appellants, in the current year, will find themselves in the same position as in the preceding year, since, in the very nature of things, it will be again impossible to secure a court review and obtain a decision before the end of the allotment period." 71 App.D.C. at page 385, 112 F.2d at page 195. The court held that this brought the case within the rules announced in Southern Pacific Terminal Company v. Interstate Commerce Commission, 1911, 219 U.S. 498, 515, 31 S. Ct. 279, 55 L.Ed. 310, and Boise City Irr. & L. Co. v. Clark, 9 Cir., 1904, 131 F. 415, 419, and other cases cited. In Southern Pacific Terminal Company v. Interstate Commerce Commission the Supreme Court held that where "questions involved in the orders of the Interstate Commerce Commission are usually continuing . . . and their consideration ought not to be, as they might be, defeated, by short term orders, capable of repetition, yet evading review, and at one time the Government and at another time the carriers have their rights determined by the Commission without a chance of redress," the Court could rule upon the questions involved in the case although the order appealed from had expired before the appeal was argued. In Boise City Irr. & L. Co. v. Clark the Court of Appeals said that "a case was never moot in a situation in which there is the necessity of deciding a question of law to serve as a guide to the body called upon to act again in the same matter."

■ But we think, in view of the criteria thus recognized in Gay Union Corporation v. Wallace as determinative of the power of the court to act, and in view of material differences between the facts therein and those in the instant cases, that we must hold Gay Union Corporation v. Wallace to be distinguishable and the court without power to pass upon the question involved on the merits of these appeals. At the time (February 26, 1940) this court decided Gay Union Corporation v. Wallace the Sugar Act was in effect for the balance of the year, regulations had been reinstated governing notice and hearings to establish new allotments, and the 1940 quotas under which allotments could be made had been fixed. It was because of this that the court said that the order was "capable of repetition" and that there was a necessity of deciding a question of law "to serve as a guide to the body [the Secretary] called upon to act again in the same matter." But in the instant cases the Sugar Act expires December 31 of the present year and there is no prospect for further present year allotments; and in respect of the year 1942 whether there will be a "Sugar Act" and consequent quotas and probability of allotments is not known. In these circumstances it would be speculative for us to say that the order appealed from is capable of repetition or that there is a necessity of deciding the question involved on the merits to guide the Secretary for the future. Accordingly the cases are

Dismissed as moot.