**David MARCHAND, Appellant,**

v.

**DIRECTOR, U. S. PROBATION OF-FICE, et al., Appellee.**

**No. 7325.**

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1969.

Decided Jan. 13, 1970.

John C. Cratsley, Cambridge, Mass., with whom David E. Kenty and Aviva E. Koenigsberg, Cambridge, were on brief, for appellant.

Willie J. Davis, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on brief, for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

On January 15, 1969, appellant was apprehended on a parole violator warrant and returned to a federal institution pending a parole revocation hearing. He filed a petition for a writ of habeas corpus claiming that he was entitled to pre-hearing release on bail. The district court denied the petition and an appeal was taken to this court.

■ The question before us is whether there is any right, statutory or constitutional, to be admitted to bail pending a parole revocation hearing. We must first deal, however, with the government's contention that the appeal has been mooted by the expiration of appellant's sentence on May 12, 1969.[1]

■ The doctrine of mootness is derived from Article III, § 2, of the Constitution, which makes federal jurisdiction turn in part on the existence of a case or controversy. Liner v. Jafco, Inc., 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964). The fundamental policies underlying the doctrine appear to be two and awareness of them is essential to dealing with this complex area of the law. The first is that the courts, for reasons of judicial economy, ought not to decide cases in which the controversy is hypothetical, a judgment cannot grant effective relief, or the parties do not have truly adverse interests. Second, it is a premise of the Anglo-American judicial system that the genuinely conflicting self-interests of parties are best suited to developing all relevant material before the court. See Sibron v. New York, 392 U.S. 40, 57, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Lord v. Veazie, 49 U.S. (8 How.), 251, 12 L.Ed. 1067 (1850); R. Robertson & F. Kirkham, Jurisdiction of the Supreme Court of the United States § 271 (Wolfson & Kurland ed. 1951); Note, Cases Moot on Appeal, 103 U.Pa.L.Rev. 772, 773–75 (1955); Note, "Moot" Administrative Orders, 53 Harv.L.Rev. 628, 629–30 (1940). Hence, when the circumstances out of which a controversy arise change so as to raise doubt concerning the adversity of the parties' interests, courts ordinarily dismiss cases as moot, regardless of the stage to which the litigation has progressed.

These considerations doubtless resulted in the Supreme Court's holding that the expiration of a criminal sentence moots questions raised during the antecedent proceedings. St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943). The narrowing of this rule to permit review when the appellant

---

1. There is no longer any question that a petition for a writ of habeas corpus is proper under the Habeas Corpus Act, 28 U.S.C. §§ 2241–55 (1964), despite the unconditional release of appellant from custody. As long as the petitioner was in custody at the time the petition was filed in the district court, jurisdiction continues and the court can "dispose of the matter as law and justice require." 28 U.S.C. § 2243 (1964). Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), overruling Parker v. Ellis, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960).

may be subject to collateral consequences flowing from his conviction[2] is responsive to the same policies. Where an appellant may be deprived of rights or subpected to disabilities by virtue of the prior conviction, the court can be confident that there is a genuine conflict between the parties. However, appellant argues that several other limitations on the mootness doctrine—all responsive to the same policies—are applicable to him.

We come first to his contention that the substantive issue presented by this case is of public importance, and as such, warrants retention of jurisdiction. This position is not without some support. However, we are constrained to disagree.

The principal case relied upon by appellant is Friend v. United States, 128 U.S.App.D.C. 323, 388 F.2d 579 (1967). There review was sought of the revocation of a conditional release of appellant from a mental institution. The court reached the merits, despite the fact that another conditional release had been granted while the appeal was pending, saying:

"[H]is circumstances are in many respects similar to those which have led to the 'continuing controversy' limitation on the mootness-doctrine—broadly, that cases are not made moot by the expiration of orders of brief duration capable of future repetition. Both doctors who testified at the hearing thought it improbable that appellant would consistently obey release conditions. His complete hospital detention is usually for a relatively brief time, not likely to persist long enough to finish appellate review. The issue as to the proper construction of § 301(e) [of tit. 24, D.C. Code] is continuing and of public importance, and

review is not precluded by mootness. See Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); Gay Union Corp. v. Wallace, 71 App.D.C. 382, 112 F.2d 192, cert. denied, 310 U.S. 647, 60 S.Ct. 1098, 84 L.Ed. 1414 (1940); Boise City Irr. & Land Co. v. Clark, 131 F. 415, 419 (9th Cir. 1904)." 388 F.2d at 581 (footnote omitted).

The foregoing quotation and the cases cited therein make it clear that the court relied upon the recurring controversy limitation, which for the reasons stated below we do not think is applicable here, rather than upon the notion that the public importance of the question alone is an adequate jurisdictional basis.[3]

■■ Moreover, while we recognize the desirability of judicial determinations of important questions, we think that this interest, standing alone, does not prevent a case from being dismissed as moot. The case or controversy requirement and its corollary, the mootness doctrine, serve to assure that courts will decide such questions only after the vigorous development of the issues which is the goal of the adversary system. To proceed to decide questions without the assistance which the system provides entails the risk of ill-considered judgments which would ultimately be detrimental to the interests urged upon us as justifying such action. This is the fundamental constitutional policy and we therefore cannot retain jurisdiction on this ground.

Next, appellant claims that the substantive question he raises in this appeal is a recurring one and that he consequently comes within the rule of Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), and its progeny. That case held that an

---

2. *See* Sibron v. New York, *supra*; Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); Fiswick v. United States, 329 U.S. 211, 67 S.Ct.

244, 91 L.Ed. 196 (1946); Comment, Mootness and Collateral Consequences in Criminal Appeals, 28 U.Chi.L.Rev. 363 (1961); Annot., 9 A.L.R.3d 462 (1966).

3. This is also true of Boxley v. Rodgers, 129 U.S.App.D.C. 408, 395 F.2d 631 (1968), relied upon by appellant.

appeal from an expired order of the Commission was not moot because the controversy involved was of a continuing nature. The Court said:

> "The questions involved in the orders of the Interstate Commerce Commission are usually continuing (as are manifestly those in the case at bar) and their consideration ought not to be, as they might be, defeated, by short term orders, capable of repetition, yet evading review, and at one time the government, and at another time the carriers, have their rights determined by the Commission without a chance of redress." 219 U.S. at 515, 31 S.Ct. at 283. *See also, e. g.,* Hadge v. Second Federal Savings and Loan Association of Boston, 409 F.2d 1254, 1255 (1st Cir. 1969).

Appellant argues that an order denying bail pending a parole revocation hearing is just the sort of short-term order to which the Court spoke in *Southern Pacific.* If bail is not granted, parole will either be revoked or continued long before an appellate court can review the decision of the district court. Moreover, it is argued that the issue involved here is raised by virtually every arrest on a parole violator warrant. Hence, appellant contends that our decision is controlled by *Southern Pacific.* We do not agree.

The recurring controversy doctrine does, as appellant argues, result in courts retaining jurisdiction after the expiration of administrative orders. However, an element which is present in the recurring controversy cases is absent here. When an order of a regulatory body such as an I.C.C. order is challenged, the party seeking review remains subject to regulation by the agency. Hence, despite expiration of the order *sub judice,* there is a substantial likelihood of a repetition of the order, which would give rise to the same controversy. Thus, it is not only the legal issue which recurs in those cases, as is true in the case at bar, but the effect on the person challenging the order. This circumstance serves to warrant the continued vitality of the litigation. *See* Diamond, Federal Jurisdiction to Decide Moot Cases. 94 U.Pa.L.Rev. 125, 136 (1946); *cf.* Gay Union Corp. v. Wallace, 71 App.D.C. 382, 112 F.2d 192, 195 (1940), cert. denied, 310 U.S. 647, 60 S.Ct. 1098, 84 L.Ed. 1414 (1941).

In this case appellant has been unconditionally released from custody. The likelihood of his again being placed in the situation of which he complains is speculative. While appellant may be genuinely concerned with the outcome of this litigation, the courts traditionally have not undertaken an examination of the *bona fides* of litigants in these circumstances. Where there has been no appreciable likelihood of the repetition of the order complained of with respect to the appellant, the recurring question doctrine has not been applied. *See* Spreckels Sugar Co. v. Wickard, 75 U.S. App.D.C. 44, 131 F.2d 12 (1941); Diamond, *supra,* at 136; *cf.* United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); United States v. Hamburg-Amerikanische, etc., 239 U.S. 466, 475, 36 S.Ct. 212, 60 L.Ed. 387 (1916); United States v. Aluminum Company of America, 148 F.2d 416, 448 (2d Cir. 1945) (sitting as court of last resort); Note, Cases Moot on Appeal, 103 U.Pa.L.Rev. 772, 784 (1955).[4]

---

4. Appellant also argues that the cases of Boise City Irr. & Land Co. v. Clark, 131 F. 415 (9th Cir. 1904), and Gay Union Corp. v. Wallace, *supra,* establish the proposition that a case will not be dismissed as moot where a decision on the merits might provide guidance to a governmental agency in a similar subsequent situation. It is clear, however, that these cases are merely applications of the recurring controversy doctrine and therefore provide no additional support for appellant.

In *Boise City* the court was faced with a challenge to the legality of a water rate order brought by an irrigation company. Since the company was still subject to rate regulation, it was evident that though the order in question had expired, the appellant occupied a relationship to the regulatory body which insured both its adversity in interest and the continuing nature of the controversy.

■ This brings us to the most difficult aspect of this issue. Although appellant has acted diligently in seeking judicial review of the denial of bail, the parole revocation process moved too quickly for such a claim to reach the appellate stage before the hearing was held.[5] Since Sibron v. New York raises questions concerning any application of the mootness doctrine which would bar review of this claim, we must carefully consider its implications.

In *Sibron* the appellant had been convicted of possession of heroin and sentenced to six months' imprisonment. He claimed that evidence introduced at his trial was seized in violation of the Fourth Amendment and appealed from his conviction. Since state law precluded release on bail pending appeal, Sibron had served the entire sentence prior to oral argument in the Supreme Court. The Court nevertheless held that the case was not moot, reasoning that Sibron might suffer collateral consequences from his conviction and emphasizing the importance of "keeping open avenues of judicial review of deprivations of constitutional right" at levels of "low visibility in the criminal process."[6] 392 U.S. at 50–58, 88 S.Ct. at 1897.

The Court's sweeping language and its manifest concern that the doctrine of mootness might consign "low-visibility" criminal cases to a constitutional limbo has led some courts to read *Sibron*

In *Gay Union* the appellant sought review of sugar marketing allotments made by the Secretary of Agriculture for the year 1939. The provisions of the statute under which the Secretary acted were suspended at the outbreak of World War II in September 1939, thereby removing the marketing restrictions. Nevertheless, the court took judicial notice of the reinstitution of the controls for 1940 and proceeded to the merits of the 1939 order. This was an even clearer application of the recurring controversy rule, since the recurrence of the dispute between the parties had already in fact occurred.

5. This is likely to be true in many cases raising this question. *But see* Matter of Whitney, 421 F.2d 337 (1st Cir., Jan. 13, 1970). A hearing on revocation must be held within a reasonable time after the apprehension of the parolee. Adams v. Hudspeth, 121 F.2d 270 (10th Cir. 1941). A delay of fourteen months has been held to be prima facie unreasonable. Holliday v. Settle, 218 F.Supp. 738, 741 (W.D.Mo.1963). More importantly, it seems that three months is roughly the maximum delay that will be tolerated. Note, Parole Revocation in the Federal System, 56 Geo.L.J. 705, 717 (1968); *see, e. g.,* United States ex rel. Buono v. Kenton, 287 F.2d 534 (2d Cir.), cert. denied, 368 U.S. 846, 82 S.Ct. 75, 7 L.Ed. 2d 44 (1961) (113 days unreasonable); United States ex rel. Hitchcock v. Kenton, 256 F.Supp. 296 (D.Conn.1966) (141 days unreasonable); United States ex rel. Vance v. Kenton, 252 F.Supp. 344 (D.Conn.1966) (123 days unreasonable).

6. On this point, the Court said:
"*St. Pierre* itself recognized two possible exceptions to its 'doctrine' of mootness, and both of them appear to us to be applicable here. The Court stated that '[i]t does not appear that petitioner could not have brought his case to this Court for review before the expiration of his sentence, noting also that because the petitioner's conviction was for contempt and because his controversy with the Government was a continuing one, there was a good chance that there would be 'ample opportunity to review' the important questions presented on the merits in a future proceeding. 319 U.S., at 43, 63 S.Ct. at 911. This was a plain recognition of the vital importance of keeping open avenues of judicial review of deprivations of constitutional right. There was no way for Sibron to bring his case here before his six-month sentence expired. * * * This was true despite the fact that he took all steps to perfect his appeal in a prompt, diligent, and timely manner.
"Many deep and abiding constitutional problems are encountered primarily at a level of 'low visibility' in the criminal process—in the context of prosecutions for 'minor' offenses which carry only short sentences. We do not believe that the Constitution contemplates that people deprived of constitutional rights at this level should be left utterly remediless and defenseless against repetitions of unconstitutional conduct." 392 U.S. at 51–53, 88 S.Ct. at 1897 (footnotes omitted).

as abandoning traditional notions of mootness, particularly the requirement of a continuing personal stake in the litigation, when constitutional claims are raised on appeal. *See, e. g.,* Esteban v. Central Missouri State College, 415 F.2d 1077, 1079 n. 1 (8th Cir. 1969). While this may well be the Court's intention, at least in some cases, we cannot read *Sibron* broadly enough to cover the case at bar.

To begin with, Sibron was challenging a criminal conviction and therefore had a substantial interest in a victory in order to clear his record.[7] While this may not be sufficient, in and of itself, to satisfy the case or controversy requirement, the Court makes it clear that, together with a possibility of collateral consequences, it will suffice. The Court's comments concerning "low visibility" cases must, therefore, be read in the light of the fact that Sibron did have a personal interest of the conventional sort.

■■ Moreover, even assuming that the Court in *Sibron* meant to articulate an exception to the mootness doctrine rather than merely to advance a persuasive reason for broadening the concept of personal interest, *but see* Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (U.S. Nov. 24, 1969), Marchand's case would not fall within the exception. The particular problem dealt with in *Sibron* was that traditional notions of mootness, combined with the New York statute prohibiting bail pending appeal, insulated an entire class of cases from review by the Supreme Court. In the instant case, however, it is the peculiarities of petitioner's circumstances rather than the characteristics of a class which preclude review.[8] Mar-

chand has no further interest in the administration of the parole system. On the other hand, one whose parole has been revoked but who is still serving sentence would be subject to the continuing jurisdiction of the parole board, has a personal stake in the litigation, and therefore come within the recurring controversy doctrine discussed above. Review, therefore, is not cut off in all similar cases. Hence, the case is moot.

Although we do not reach the merits in this case, much may be said for Congressional consideration of the desirability of release on bail pending a hearing on revocation of parole. Such consideration should include the fact that the granting of bail pending appeal postpones the commencement of service, although not the total length of sentence, but if a defendant were bailed pending a hearing on revocation of his parole, under the present statutory scheme, the date of the termination of sentence would not be extended. Hence, the defendant would receive free time pending his revocation hearing.

The judgment of the District Court is vacated and the case remanded with instructions to dismiss the petition as moot.

ALDRICH, Chief Judge (concurring).

I agree with all of the court's opinion, except that I have possible reservations about the penultimate paragraph. I am not so certain that every defendant who is serving a sentence has a recognizable stake in the issue of whether, should he be paroled and then be charged with violating parole, he will be entitled to bail pending a revocation hearing. I am satisfied that the present appeal is moot irrespective of the answer to that question.

---

7. Marchand, on the other hand, has no further stake in the operation of the federal parole system.

8. Indeed, we have today decided a question closely related to that which petitioner seeks to raise: Matter of Whitney, *supra* n. 5.