Michael **MARPLE**

v.

John R. **MANSON**, Commissioner of the Connecticut Department of Corrections, et al.

**Civ. No. 15525.**

United States District Court,
D. Connecticut.

March 19, 1974.

Stephen Wizner, Judith M. Mears, New Haven, Conn., for petitioner.

Stephen J. O'Neill, Asst. Atty. Gen., Hartford, Conn., for respondents.

## MEMORANDUM OF DECISION ON RESPONDENTS' MOTION TO DISMISS

NEWMAN, District Judge.

This is a motion to dismiss as moot a petition for habeas corpus and for a declaratory judgment. The suit was brought by a state prisoner attacking the constitutionality of his indefinite reformatory sentence imposed pursuant to Conn.Gen.Stat. § 18–75. The issue is whether federal jurisdiction with respect to petitioner's claims has been terminated by the expiration of his sentence.

Petitioner pleaded guilty to committing two separate offenses of larceny in the third degree, a Class B misdemeanor for which the maximum adult sentence is imprisonment for six months. Conn.Gen.Stat. §§ 53a–124 and 53a–36. Since petitioner was eighteen years of age at the time of both convictions, he was eligible for sentencing pursuant to Conn.Gen.Stat. § 18–75,[1] and he received concurrent reformatory sentences of an indefinite term, not to exceed two years.

After his incarceration at the Connecticut Correctional Institution, Cheshire, petitioner filed a class action in this Court. The action sought a declaratory judgment that § 18–75 violates the Fourteenth Amendment by subjecting those aged sixteen to twenty-one to greater punishment than adults. It also requested habeas corpus relief from any portion of a class member's indefinite sentence exceeding the maximum adult penalty for his convicted offense.

Petitioner filed this action on January 5, 1973.[2] Prior to an adjudication of petitioner's claims, his two-year indefinite reformatory sentence expired on November 3, 1973, whereupon respondents filed this motion to dismiss the action as moot.

Petitioner argues that his action for habeas corpus relief should not be dismissed as moot because (a) he was "in custody" at the Connecticut Correctional Institution, Cheshire, when he invoked the jurisdiction of this Court by filing his habeas corpus petition, and (b) the "collateral consequences" which may arise from his indefinite sentence give him a substantial stake in the sentence that survives its expiration.

In Carafas v. LaVallee, 391 U.S. 234, 238–239, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), the Supreme Court observed that the relief which may be granted under the federal habeas corpus statute is not restricted to ordering a petitioner's immediate release from custody, and that release does not necessarily moot a habeas corpus action. The Court held that Carafas' action was not moot although his sentence had expired because the collateral consequences which he had incurred, or might incur, from his conviction gave him "a substantial stake in the judgment of conviction which survive[d] the satisfaction of the sentence imposed on him. Fiswick v. United States, 329 U.S. 211, 222, 67 S.Ct. 224, 230, 91 L.Ed. 196 (1946)." Id. at 237, 88 S.Ct. at 1559.

1. Conn.Gen.Stat. § 18–75 provides:
   "The circuit court may sentence any male person between the ages of sixteen and twenty-one years to the reformatory in any case where the maximum term of imprisonment for the offense committed does not exceed imprisonment in the State Prison for five years. Any person so sentenced shall be sentenced for an indefinite term and may be detained in the reformatory not more than two years."

2. A previous action was dismissed for failure to exhaust state remedies. Petitioner then filed a state habeas corpus petition. The Superior Court at New Haven rejected his claims that § 18–75 unconstitutionally discriminates against male persons between the ages of sixteen and twenty-one years who are convicted of crimes carrying a maximum sentence of less than two years. It also decided that § 18–75 does not apply an unconstitutionally vague standard—"amenable to reformatory methods"—to guide the sentencing court in determining whether it should impose an indefinite reformatory sentence rather than the regular statutory sentence. Conn.Gen.Stat. § 18–73. Petitioner's certification of an appeal from this decision was denied by the Connecticut Supreme Court on December 12, 1972.

The respondents argue that federal jurisdiction over Marple's habeas corpus proceeding terminated upon the expiration of his sentence because he is merely challenging the constitutionality of his indefinite sentence rather than attacking the underlying judgment of conviction. They contend that North Carolina v. Rice, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971), requires that petitioner's case be dismissed as moot.

North Carolina v. Rice did not rule that a habeas corpus challenge to a sentence already served is moot. The Court reversed the Court of Appeals for vacating the conviction when only the sentence had been challenged. The Supreme Court remanded the case to permit the Court of Appeals to consider *whether* Rice's action was moot, that is, whether the challenged sentence, rather than the underlying judgment of conviction, had collateral consequences that petitioner was entitled to avoid. If so, he *might* be entitled to resentencing. *Rice* merely refined the Court's holding in *Carafas* by requiring a court to focus upon the collateral consequences flowing solely from a challenged sentence when determining whether expiration of a sentence moots a habeas corpus attack upon the sentence.

Petitioner has been unable to identify any collateral consequence the State of Connecticut will impose because he received a two-year indefinite sentence rather than the six-month sentence. However, he does present New York's "persistent felony offender" provision as an example of the possible collateral consequences that may flow from his indefinite sentence. Under New York law, a more severe penalty may be imposed upon a person who qualifies as a "persistent felony offender" because he has previously been convicted of two or more felonies. N.Y.Penal Law § 70.10 (McKinney 1967). A "previous felony conviction" within the meaning of this statute is:

" . . . a conviction of a felony in [New York], or of a crime in any other jurisdiction, provided:

"(i) that a sentence to a term of imprisonment in excess of one year . . . was imposed therefor; and

"(ii) that the defendant was imprisoned under sentence for such conviction prior to the commission of the present felony. . . . "

*Id.* § 70.10, subd. 1(b)(i), (ii).[3]

Apparently the New York courts have not had to decide whether an indeterminate sentence that can and does last for more than one year qualifies under § 70.10, subd. 1(b)(i). But there is at least a substantial risk of such a construction in New York and perhaps elsewhere under similar statutes. *Cf.* People v. Wright, 69 Misc.2d 1050, 332 N.Y.S.2d 231 (Sup.Ct.1972).

Mancusi v. Stubbs, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972), indicates that even the possibility of collateral consequences is sufficient to meet a claim of mootness. In *Stubbs* the petitioner was convicted of a felony in the New York courts. After he had been sentenced as a second felony offender, he filed a federal habeas corpus petition alleging that his prior Tennessee conviction for murder was unconstitutional and could not serve as the predicate for imposing a more severe New York pen-

3. Similarly, under New York's sentencing provisions, a more severe penalty is imposed upon a person who qualifies as a "second felony offender" because he "stands convicted of a felony . . . after having previously been subjected to one or more predicate felony convictions. . . ." N.Y.Penal Law § 70.06(1)(a) (McKinney Supp. 1973). To qualify as a predicate felony conviction, "the conviction must have been in [New York] of a felony, or in any other jurisdiction of an offense for which a sentence to a term of imprisonment in excess of one year . . . was authorized irrespective of whether such sentence was imposed. . . ." *Id.* § 70.06(1)(b)(i). Arguable, petitioner Marple's convictions for larceny could be characterized as "predicate felony convictions" because § 18–75 authorizes the sentencing court to impose a term of imprisonment in excess of one year upon male persons between sixteen and twenty-one years of age who are convicted of committing that Class B misdemeanor.

alty. The District Court denied petitioner relief, but the Court of Appeals, reversed, invalidated the Tennessee conviction, and ordered resentencing. Stubbs was then resentenced as a second felony offender on the basis of a prior Texas conviction he was appealing. The Supreme Court rejected the claim that the petitioner's case had become moot when he was resentenced. It concluded that the mere possibility that the challenged Tennessee conviction might be used by New York as the predicate for a more severe penalty in the event that the Texas conviction were reversed gave the petitioner sufficient legal interest to attack the Tennessee conviction even though he had been resentenced without reference to it.[4] Similarly, the possibility that petitioner Marple's expired sentence might be used by another jurisdiction as the predicate for validly sentencing him as a second or persistent felony offender, or for imposing other burdens or disabilities, gives him a substantial stake in litigating the lawfulness of that sentence. Exercising jurisdiction is even more appropriate here than in *Stubbs* because the merits of this petition will involve an assessment of the nature of confinement at the Connecticut Correctional Institution, Cheshire. An issue of this sort, unlike the validity of another state's conviction, is more appropriately determined in this forum at this time than subsequently in another jurisdiction when the consequences of Marple's sentence actually occur.

The possibility of consequences collateral to Marple's expired sentence is also

sufficient to sustain his action for declaratory relief. 6A J. Moore, Federal Practice ¶ 57.13, at 57–137 (2d ed. 1974). In Black v. Warden, United States Penitentiary, 467 F.2d 202 (10th Cir. 1972), a prisoner brought suit for declaratory and injunctive relief from his confinement in an isolation unit. His confinement in the isolation unit was terminated prior to final adjudication of the merits by his transfer from the defendant's custody. The Court of Appeals observed that the computation of the prisoner's good time allowance was affected by his confinement in the isolation unit. It also noted that "there may be a continuing effect in the penal institutions from the use of records maintained concerning this punishment." *Id.* at 204. Accordingly, the prisoner's action for declaratory relief was not moot because there were possible collateral consequences from the challenged confinement. *Accord,* Papish v. Bd. of Curators of Univ. of Missouri, 464 F.2d 136 (8th Cir. 1972), rev'd on merits, 410 U.S. 667, 93 S.Ct. 1197, 35 L.Ed.2d 618 (1973) (student's academic ineligibility did not moot action for declaratory and injunctive relief from university dismissal since collateral consequences arose from dismissal); Jones v. Snead, 431 F.2d 1115 (8th Cir. 1970).

Marple's action falls within another important exception to the doctrine of mootness. The issues presented for adjudication are "capable of repetition, yet evading review." See Roe v. Wade, 410 U.S. 113, 124–125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973); Dunn v. Blumstein,

---

4. The "possibility of collateral consequences" exception to the doctrine of mootness has been applied by the federal courts in various contexts. *See* Forbes v. Wainwright, 425 F.2d 724 (5th Cir. 1970) (possibility that petitioner's Florida convictions might be used in an habitual criminal proceeding in Florida or in another jurisdiction gives him standing to maintain appeal from denial of habeas relief after the expiration of his Florida sentences); United States ex rel. Durocher v. LaVallee, 330 F.2d 303, 305, n. 5 (2d Cir. 1964) (although a state prisoner's second-offender sentence did not exceed

the maximum penalty for a first offender, possibility that he would receive a shorter sentence if he were granted habeas corpus relief and resentenced as a first offender sufficient to sustain controversy); Scarpelli v. Gagnon, 317 F.Supp. 72 (D.C.Wis.1970), aff'd in part, rev'd in part and remanded, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (possible adverse effects of probation revocation were sufficient collateral consequence to save habeas corpus petition from mootness although petitioner was no longer technically incarcerated by virtue of probation revocation).

405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); Southern Pac. Term. Co. v. I.C.C., 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). In Gatling v. Butler, 52 F.R.D. 389, 394, n. 7 (D.Conn.1971), the Court observed that the application of this concept is particularly appropriate in "cases where the claim is 'inherently elusive of review because of the time required for the judicial machinery to produce a resolution.' Note, *Mootness on Appeal in the Supreme Court*, 83 Harv.L.Rev. 1672, 1678 (1970) . . . ."

An indefinite sentence under § 18–75 may not exceed two years. Moreover, deductions for jail time credit and good behavior may considerably shorten its length. Marple's allowance for jail time and good behavior resulted in the expiration of his sentence seventeen months after his sentencing.

Considering these time limitations, a prisoner's indefinite sentence inevitably will expire before he has had the opportunity to prepare and adjudicate the important constitutional claims presented by a federal action seeking declaratory or habeas corpus relief from his sentence. The petitioner's case is not atypical. Although Marple's initial federal action was filed in September, 1972, the time delays incurred by the subsequent dismissal of the action and by his exhaustion of state remedies precluded him from instituting his present federal suit until January, 1973. After prompt though unsuccessful efforts to identify class members, petitioner filed an amended complaint in May, 1973, deleting his request for class relief. Thereafter, the parties diligently proceeded with discovery. When Marple's sentence expired on November 3, 1973, the parties were nearing the completion of discovery.

These facts reveal that, despite diligent and prompt efforts by the parties, petitioner's case could not be fully prepared and adjudicated prior to the expiration of his short-term sentence. Even if the parties had been able to adjudicate the claims in this Court prior to the expiration of sentence, appellate review of the case undoubtedly would not be completed until petitioner's short-term sentence had expired.

It is arguable that Marple could have obtained adequate speedy relief by applying to the Sentence Review Division of the Superior Court. Conn.Gen. Stat. § 51–195. However, when petitioner applied for such relief, he was informed that his case would not be reviewed unless he withdrew his state habeas corpus petition. Since Marple was understandably reluctant to delay, and perhaps to jeopardize, his opportunity to adjudicate his constitutional claims more fully in a state or federal habeas corpus proceeding, relief from the Sentence Review Division was not realistically available to him. Unless the Sentence Review Division departs from this policy, such speedy relief would remain unavailable to other prisoners who might challenge the constitutionality of § 18–75 if Marple's action were dismissed as moot.

Finally, petitioner is nineteen years of age and is still eligible for indefinite sentencing up to two years if he should commit another offense carrying a maximum term not in excess of five years' imprisonment. His second indefinite sentence undoubtedly would expire before he could pursue another federal action to final adjudication. In Sibron v. New York, 392 U.S. 40, 52–53, 88 S.Ct. 1889, 1897, 20 L.Ed.2d 917 (1968), the Court stated:

"Many deep and abiding constitutional problems are encountered primarily at a level of 'low visibility' in the criminal process—in the context of prosecutions for 'minor' offenses which carry only short sentences. We do not believe that the Constitution contemplates that people deprived of constitutional rights at this level should be left utterly remediless and defenseless against repetitions of unconstitutional conduct."

Therefore, petitioner possesses the requisite personal stake in the recurrence of the challenged conduct to pursue this litigation. See Consumers Union of United States, Inc. v. Veterans Admin., 436 F.2d 1363, 1365 (2d Cir. 1971).

The circumstances of this case reveal that Marple has a substantial personal stake in attacking the validity of his § 18–75 sentence which survives its expiration. Therefore, the parties have adverse legal interests of sufficient immediacy and reality to warrant determination of the merits. Accordingly, the respondents' motion to dismiss is denied.