ALBERT J. BLAKE *vs.* MASSACHUSETTS PAROLE BOARD.

Suffolk.  November 7, 1975. — February 11, 1976.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Moot Question.   Practice, Civil,* Moot case.   *Parole.*

An appeal from a decision of the Superior Court that a State prison inmate was not entitled to appear personally before the parole board in support of his application for early parole eligibility under G. L. c. 127, § 133, became moot when the inmate was released from custody on the basis of time served and good-conduct credits accrued.   [703-708]

BILL IN EQUITY filed in the Superior Court on November 21, 1972.

The suit was heard by *Lynch,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Michael D. Cutler* for the plaintiff.

*Michael C. Donahue,* Assistant District Attorney, for the Massachusetts Parole Board.

KAPLAN, J.   On June 27, 1969, the plaintiff Albert J. Blake was convicted on three counts of armed robbery (G. L. c. 265, § 17) and was sentenced to three concurrent eight-to-ten year terms of imprisonment at the Massachusetts Correctional Institution at Walpole.   Armed robbery is one of a number of offenses for which strict

parole eligibility standards are set by G. L. c. 127, § 133.[1] Thus the plaintiff would first become automatically eligible for parole only after he had served two-thirds of his minimum sentence. The strict rule, however, is relaxed to some extent by the same § 133: on the recommendation of the superintendent of the prison and of the commissioner of correction, and with the approval of a majority of the parole board, the plaintiff could be made eligible for parole consideration at the same time as inmates not in the strict class, that is, after serving only one-third of his minimum term.

The plaintiff filed an application for early parole eligibility on June 8, 1972, and written recommendations were submitted to the parole board by the superintendent and the commissioner. The board refused, despite the plaintiff's repeated requests, to permit him to appear personally before it or a panel of its members. On November 3, 1972, the board denied his application by a vote of four to zero. Thereupon the plaintiff commenced the instant action in the Superior Court against the parole board praying for a declaration of his right to appear personally in support of his application for early eligibility. The plaintiff failed in the action on the merits: the judge found that a right to a personal appearance was not granted by statute, or required by the equal protection or due process guaranty. The plaintiff

---

[1] The section provides that a person convicted of certain enumerated offenses and incarcerated with a minimum sentence shall not be eligible for parole "until he shall have served two thirds of such minimum sentence, but in any event not less than two years or if he has two or more sentences to be served otherwise than concurrently, two thirds of the aggregate of the minimum terms of such several sentences, but in any event not less than two years for each sentence . . .." An inmate who was not convicted of an enumerated offense and who is held with a minimum sentence is eligible for parole after having "served one third of such minimum sentence, but in any event not less than one year, or, if he has two or more sentences to be served otherwise than concurrently, one third of the aggregate of the minimum terms of such several sentences, but in any event not less than one year for each such sentence . . .."

appealed to the Appeals Court. We took the case pursuant to G. L. c. 211A, § 10 (A).

The plaintiff contends here that the parole board denied him due process of law by refusing him an opportunity to appear before it. But there is a question at the threshold whether the appeal is moot; for on September 19, 1974, during the pendency of the appeal, the plaintiff was discharged from custody on the basis of time served and good-conduct credits accrued.[2]

1. Ordinarily, litigation is considered moot when the party who claimed to be aggrieved ceases to have a personal stake in its outcome. See, e.g., *Vigoda* v. *Superintendent of Boston State Hosp.*, 336 Mass. 724, 725-726 (1958); *Henderson* v. *Mayor of Medford*, 321 Mass. 732, 733-735 (1947). That seems plainly to have occurred here. The plaintiff argues otherwise because, he says, the allegedly improper denial of eligibility for early parole might influence bail, sentencing, or parole consideration in his possible future involvements with the criminal justice system. Of course, the plaintiff's appearance before the parole board would by no means have assured favorable action by the board. But passing that, the influence of denial of early parole on later encounters must be considered insignificant, especially by comparison with the conviction and sentence, the action of the parole board on parole applications, if any, made by the plaintiff after he became eligible, and his actual prison record.[3]

---

[2] The Superior Court issued its declaratory judgment on July 12, 1974. The plaintiff appealed on September 3, 1974.

[3] In, *Sibron* v. *New York*, 392 U.S. 40, 55 (1968), the Court (quoting in part from Warren, C.J., dissenting in *Parker* v. *Ellis*, 362 U.S. 574, 577 [1960]) noted that "[t]he mere 'possibility' . . . [of collateral consequences] is enough to preserve a criminal case from ending 'ignominiously in the limbo of mootness,'" and thus the appellant's release from custody did not render moot his challenge to the legality of his conviction. In *North Carolina* v. *Rice*, 404 U.S. 244 (1971), however, the Court refused to consider a challenge to the

The present case is thus quite different from the cases of parole or probation revocation cited by the plaintiff.[4] These decided that the revocations could have future consequences serious enough to warrant judicial attention to challenges to their legality even though custody pursuant to the revocation had terminated. A parole revocation in itself implies a failure of the parolee to satisfy the obligations of conditional liberty; it has a far greater bearing on future administrative or judicial decisions than denial of early eligibility, especially since the latter denial may reflect a judgment on the seriousness of the underlying crime rather than about rehabilitative progress or suitability for parole.

---

validity of a criminal sentence; instead it remanded for consideration of mootness in light of the completion of the sentence at issue and despite an acknowledgment that disabilities might result from the allegedly improper sentence. It has been suggested that *Rice* may be reconciled with *Sibron* in that the issue in *Rice* did not relate to the legality of conviction and hence did not bear on the underlying moral stigma, whereas the issue in *Sibron* did relate to the conviction itself. See Note, The Mootness Doctrine in the Supreme Court, 88 Harv. L. Rev. 373, 382-383 (1974); cf. *Williams* v. *United States Bd. of Parole,* 383 F. Supp. 402, 403 (D. Conn. 1974) (finding *Sibron* "not directly on point" in challenge to parole revocation but concluding nevertheless that the case was not moot, despite release of petitioner, because of the collateral consequences of parole revocation). See also *Marchand* v. *Director, United States Probation Office,* 421 F.2d 331, 335-336 (1st Cir. 1970) (finding *Sibron* applicable only to "low visibility" criminal cases that might otherwise evade review). But see *Hewett* v. *North Carolina,* 415 F.2d 1316, 1320-1321 (4th Cir. 1969) (pre-*Rice* case refusing to distinguish between challenge to revocation of probation and challenge to underlying conviction); *Marple* v. *Manson,* 373 F. Supp. 757, 759-760, 760 n.4 (D. Conn. 1974) (reading *Rice* as authorizing the application of the *Sibron* standard in assessing the collateral consequences of a challenged sentence). Whatever the appropriate standard, and especially in view of the practice of the Supreme Court (see text below), we conclude that the collateral consequences of the denial at issue are insufficient to require us to reach the merits.

[4] See *Hahn* v. *Burke,* 430 F.2d 100 (7th Cir. 1970), cert. denied, 402 U.S. 933 (1971); *Hewett* v. *North Carolina,* 415 F.2d 1316 (4th Cir. 1969); *Williams* v. *United States Bd. of Parole,* 383 F. Supp. 402 (D. Conn. 1974).

Practice in United States courts on similar issues of mootness is revealing. In the recent case of *Weinstein* v. *Bradford,* 423 U.S. 147 (1975) (per curiam), the Supreme Court held that a controversy concerning a parole board's obligation to accord an inmate certain procedural rights had been mooted by his complete release from custody: "[f]rom [the date of such release] forward it is plain that respondent can have no interest whatever in the procedures followed by petitioners in granting parole." *Id.* at 148. Prior cases have gone further to suggest that similar challenges to procedures on consideration of parole should be held mooted when the inmate secures (or is about to secure) parole, short of entire release from custody. See the *Scarpa* and *Johnson* sequences of decisions: *Scarpa* v. *United States Bd. of Parole,* 477 F.2d 278 (5th Cir.),[5] cert. granted, judgment vacated, case remanded, 414 U.S. 809, case dismissed as moot, 501 F.2d 992 (5th Cir. 1973). *United States ex rel. Johnson* v. *Chairman of N.Y. State Bd. of Parole,* 500 F.2d 925 (2d Cir.), cert. granted, judgment vacated, case remanded with directions to dismiss as moot sub nom. *Regan* v. *Johnson,* 419 U.S. 1015 (1974).[6] See also *United States Bd. of Parole* v. *Merhige,* 487 F.2d 25, 28 (4th Cir. 1973), cert. denied, 417 U.S. 918 (1974), where the court said, with regard to an action by an inmate for injunctive and declaratory relief against an allegedly improper denial of parole, that "[the inmate's] release on parole unquestionably mooted the issues raised in his

---

[5] The Fifth Circuit later held that its *Scarpa* decision was to have "no precedential value." *Ridley* v. *McCall,* 496 F.2d 213, 214 (5th Cir. 1974). See also *Childs* v. *United States Bd. of Parole,* 511 F.2d 1270, 1280-1281 (D.C. Cir. 1974).

[6] An examination of the petition for a writ of certiorari and brief in opposition reveals only one fact to account for the dismissal: the inmate was released on parole following the decision by the United States Court of Appeals.

complaint." [7]   Cf. *Marchand* v. *Director, United States Probation Office,* 421 F.2d 331 (1st Cir. 1970) (termination of sentence moots attack on failure to release alleged parole violator on bail pending parole revocation hearing). Against the background of the cases just cited, the plaintiff's unconditional release from custody seems a plainly proper ground for mooting his challenge to the denial of early eligibility for parole.

Besides contending — erroneously, as we have tried to show — that he has a sufficient remaining stake or interest in the litigation, the plaintiff quarrels with the general rule that insists that litigants have such a stake. We may grant the plaintiff his point that it is possible to overrate the strength of a justification sometimes offered for the rule (see, e.g., *Marchand* v. *Director, United States Probation Office, supra* at 332), namely, that the parties will not be motivated to develop the issues thoroughly unless they have genuine, live, conflicting self-interests.[8] But there is more to the rule than that. See *Wolf* v. *Commissioner of Pub. Welfare,* 367 Mass. 293, 297-298 (1975). It seeks such values as may derive from saving questionable expenditures of judicial resources;[9] preserving the courts' intrinsic character as dispute-solvers and correspondingly avoiding intrusion by the courts

---

[7] The case was filed as a class action and the court did consider the merits as to the interveners on the side of the plaintiff. See *Wolf* v. *Commissioner of Pub. Welfare,* 367 Mass. 293, 298 (1975).

[8] See Scott, Standing in the Supreme Court — A Functional Analysis, 86 Harv. L. Rev. 645, 674 (1973) ("[t]he idle and whimsical plaintiff, a dilettante who litigates for a lark, is a specter which haunts the legal literature, not the courtroom"); Jaffe, The Citizen as Litigant in Public Actions: The Non-Hohfeldian or Ideological Plaintiff, 116 U. Pa. L. Rev. 1033, 1037-1038 (1968); Note, *supra* note 3, at 375-376 n.13.

[9] In the particular case, with the action at the appellate level, economy of a sort might be served by going to a decision if it were anticipated that similar issues might arise in the future. Cf. *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 731 (1943). But predictions of the nature of future litigation and the applicability of

upon fields reserved to other branches of government;[10] and exercising "judicial restraint," especially regarding purported constitutional claims.[11] These and other considerations appear with varying strengths and consequences in cases where mootness is asserted; we need say here only that we are not prepared to abandon or compromise the general rule.

2. Next, the plaintiff attempts to take shelter in one or another stated "exception" to the conventional doctrine. In some instances courts have been willing to resolve dead disputes if there was a good likelihood that the same disputes would recur between the same parties. See *Reilly* v. *School Comm. of Boston*, 362 Mass. 689, 694-695 (1972); *Marchand* v. *Director, United States Probation Office*, 421 F.2d 331, 333-334 (1st Cir. 1970); cf. *McLaughlin* v. *Board of Appeals of Harwich*, 359 Mass. 416, 419 (1971); *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943). Where this probability is found, there is some assurance that judicial economy may be served by prompt rather than deferred decision, and the parties may be relieved of a burden of relitigation that could prove unfair. We are told that the plaintiff has been indicted for several offenses within the strict category of § 133. Argument on this basis falls incongru-

---

precedents are notoriously infirm; and time and circumstances of decision are not indifferent factors in the development and outcome of law. Thus the supposed economy may here be readily cancelled out by other factors.

[10] See *DeFunis* v. *Odegaard*, 416 U.S. 312, 316 (1974); *North Carolina* v. *Rice*, 404 U.S. 244, 246 (1971); cf. *Flast* v. *Cohen*, 392 U.S. 83, 95 (1968).

Avoiding precipitate judicial involvement in a matter of prison management may leave room for administrative adjustments better suited to the problem than a judicial decision.

[11] See P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 110 (2d ed. 1973); Levi, The Nature of Judicial Reasoning, 32 U. Chi. L. Rev. 395, 403-405 (1965); Note, *supra* note 3, at 376 n.14.

ously from the plaintiff's lips, but we may point out that he can hardly be sure of convictions or of the nature of the sentences or of the parole determinations that may eventuate.

Another "exception" exists for controversies "capable of repetition, yet evading review" (see, e.g., *Roe* v. *Wade,* 410 U.S. 113, 124-125 [1973]; *Dunn* v. *Blumstein,* 405 U.S. 330, 333 n.2 [1972]), a necessary exception if we are unwilling to see questions suitable for judicial settlement barred from all such examination. See *Wolf* v. *Commissioner of Pub. Welfare,* 367 Mass. 293, 298-300 (1975); *Karchmar* v. *Worcester,* 364 Mass. 124, 136 (1973); *Tsongas* v. *Secretary of the Commonwealth,* 362 Mass. 708, 713-714 (1972). But the controversy over the procedure on early parole need not evade review if parties show even minimal resoluteness in carrying on litigation. We may note that inmates subject to the challenged procedure include those convicted of the more serious crimes and serving the longer sentences which allow for prolonged periods during which the eligibility question can come up and be litigated to a conclusion.[12]

In accord with past practice when a case becomes moot on appeal (see *Reilly* v. *School Comm. of Boston,* 362 Mass. 689, 696 [1972]; *Vigoda* v. *Superintendent of Boston State Hosp.,* 336 Mass. 724, 726-727 [1958]), we vacate the declaration appealed from with a notation that the decision is not on the merits, and remand the case to the Superior Court with directions to dismiss the action.

*So ordered.*

---

[12] *Weinstein* v. *Bradford,* 423 U.S. 147 (1975), suggests that in Federal practice the "exception" here discussed may be confined to certain situations of class actions. See *Sosna* v. *Iowa,* 419 U.S. 393, 397-403 (1975). But see *Storer* v. *Brown,* 415 U.S. 724, 737 n.8 (1974).