ATTORNEY GENERAL vs. COMMISSIONER OF INSURANCE
& another[1]
(and a consolidated case[2]).

Suffolk. September 16, 1988. — November 9, 1988.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Insurance*, Motor vehicle insurance, Commissioner of Insurance, Rating. *Practice, Civil*, Review of decision of the Commissioner of Insurance. *Administrative Law*, Hearing, Judicial Review. *Evidence*, Administrative proceeding. *Moot Question*.

Insurance rate setting proceedings before the Commissioner of Insurance, which resulted in an increase in the private passenger motor vehicle insurance rates for 1987 and 1988, did not exceed the scope of respective remand orders of this court or constitute retroactive rate making. [373-376]

Substantial evidence before the Commissioner of Insurance, in proceedings following remand by this court, supported his decision to increase private passenger motor vehicle insurance rates for 1987 and 1988 on the basis of his application of the loss ratio method. [376-377]

In proceedings before the Commissioner of Insurance to fix certain rates for the insurance industry, there was no error in the commissioner's exclusion of proffered evidence or in his determination of the weight to be given certain evidence. [377-378]

In the circumstances of insurance rate setting proceedings before the Commissioner of Insurance following remand by this court, neither the abbreviated schedule of the proceedings on remand, nor the fact that notice was limited to those parties who had participated in the original hearings, deprived consumers of their due process rights or opportunity to be heard. [378-379]

Where the question of an insurance company's intervention in a rate setting proceeding had become moot, this court declined to consider the company's appeal from the denial by the Commissioner of Insurance of its request for leave to intervene. [379-380]

---

[1] Massachusetts Automobile Rating and Accident Prevention Bureau, intervener.

[2] The Hanover Insurance Company vs. Commissioner of Insurance.

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on September 8, 1987, and March 29, 1988, respectively.

The cases were reported by *Lynch, J.*

*Paul M. Stein,* Assistant Attorney General (*Hilary Rowen,* Assistant Attorney General, with him) for the Attorney General.

*James K. Brown* (*Barnett D. Ovrut* with him) for The Hanover Insurance Company.

*James P. Kiernan,* Special Assistant Attorney General (*Harold J. Keohane,* Special Assistant Attorney General, with him) for the Commissioner of Insurance.

*Acheson H. Callaghan, Jr.* (*E. Michael Sloman* with him) for the intervener.

LYNCH, J. This appeal is submitted on a reservation and report by a single justice of the Supreme Judicial Court for the county of Suffolk, and presents challenges to the fixing and establishing of 1987 and 1988 private passenger motor vehicle insurance rates by the Commissioner of Insurance (commissioner). The complex and protracted history of the rate setting processes for those two years encompasses three requests for review of the original 1987 rates set by the commissioner on May 4, 1987, one of which was presented to, and resulted in an order of remand from, this court. *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.,* 401 Mass. 282 (1987) (the 1987 remand order).[3]

On the same day the 1987 remand order was issued, the commissioner issued the 1988 private passenger motor vehicle insurance rates. The Massachusetts Automobile Rating and Accident Prevention Bureau (bureau) filed a complaint for review of those rates pursuant to G. L. c. 175, § 113B, and The Hanover Insurance Company (Hanover) likewise sought review of the commissioner's denial of its petition to intervene in the 1988 rate hearings and proceedings. A single justice of this court consolidated the two petitions and, while retaining juris-

---

[3] The opinion contains a more detailed summary of the 1987 hearings and appeals.

diction over both cases, remanded them to the commissioner on January 21, 1988 (the 1988 remand order), for reconsideration in light of our remand of the 1987 rates. Thereafter, the commissioner consolidated the proceedings on remand for the 1987 and 1988 rates, conducted further hearings (the remand hearings) and, on March 10, 1988, issued his decision (the remand decision) which set an 8.3% increase in the 1987 rates and a 7.7% increase in the 1988 rates (in addition to increases already established in the original 1987 and 1988 rate proceedings).

The bureau declined to pursue further appeals regarding the 1987 or 1988 rates. The Attorney General filed a petition for review of the remand decision, although he had not appealed from the commissioner's original decisions on the 1987 or 1988 rates. The bureau was permitted to intervene as a defendant in the Attorney General's appeal, which was consolidated by the single justice with Hanover's appeal, and reserved and reported to this court.

Following the 1987 remand order, the commissioner requested that the four primary parties to the 1987 rate proceedings (the bureau, the State Rating Bureau [SRB], the Attorney General, and the Professional Insurance Agents of New England and Independent Insurance Agents of Massachusetts [agents]), suggest what procedural and substantive steps should be taken to meet the directives of the 1987 remand order. Oral arguments were made and briefs received on the parties' positions. Similarly, following the 1988 remand order, the commissioner requested that the parties (the bureau, Hanover, the Attorney General, agents, and SRB) articulate positions on which issues of the 1988 rate proceedings were affected by the 1988 remand order. The commissioner then notified the parties of his determination of the obligations of the Division of Insurance under both the 1987 remand order and the 1988 remand order (collectively, the "remand orders"), and consolidated the hearings for both years into one proceeding.

The Attorney General challenges the authority of the commissioner to modify on remand the 1987 and 1988 rates, alleging error in both the procedures followed and the decision

reached, as set forth below. Hanover claims that the commissioner erred in denying its petition to intervene in the 1988 proceedings.

1. *Scope of the remand orders.* The Attorney General argues that the commissioner impermissibly reopened the rate proceedings by holding hearings after the remand orders and by addressing issues and considering evidence beyond the scope of the remand orders. We disagree. In its original appeal from the 1987 rate decision, the bureau argued that the exclusion of certain evidence without explanation by the commissioner was error requiring remand. *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.*, 401 Mass. at 285. With respect to three documents concerning past underwriting results[4] — a type of evidence admitted and relied on in past proceedings — we agreed with the bureau that the commissioner should have admitted the evidence or explained why it was excluded. *Id.* "[I]t was up to the commissioner to articulate some reason for ignoring the evidence," *id.* at 287, so that we could test the decision for the "reasoned consistency" required in agency decision making. *Id.*, citing *Boston Gas Co.* v. *Department of Pub. Utils.*, 367 Mass. 92, 104 (1975). The Attorney General contends that the scope of the commissioner's responsibility on remand did not include reopening the hearings to admit and consider the excluded evidence. This contention ignores the language of the 1987 remand order itself, which directed the commissioner to "make findings and, if necessary, hold further hearings in order to fix and establish the 1987 automobile insurance rates." 401 Mass. at 301. On remand, the commissioner determined that he was unable to provide an acceptable rationale for the exclusion of the three exhibits. He therefore reopened the 1987 rate record to admit and con-

---

[4] Marked for identification as exhibits 159, 183, and 201. "Underwriting results" show the industry's profit or loss solely from underwriting insurance. By themselves they do not reflect over-all industry profitability. See *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.*, 401 Mass. at 284, 286, and cases cited.

sider the exhibits.[5] The commissioner also determined, after considering comments from the parties to the initial proceedings, that the 1988 remand order required the reconsideration of the 1988 rates and the effect on those rates of the underwriting evidence to be admitted into the 1987 rate record. This course of action is clearly contemplated by the 1988 remand order which directs the commissioner to reconsider the two 1988 petitions "in light of the decision" in the 1987 remand order, and further directs that he "shall *hold such hearings* and shall *amend or supplement* his decision as he deems necessary" (emphasis added).

Having reopened the proceedings and admitted the exhibits in evidence,[6] the commissioner then considered what effect the documents had on the previously established rates. This procedure was not performed in a vacuum. In addition to having as background the testimony from the initial hearings,[7] the commissioner heard arguments and received briefs from the parties, not only on their recommendations of the scope of response necessary to comply with the remand orders, but also on the parties' views of the impact of the underwriting evidence on the 1987 and 1988 rates. Since the 1987 remand order expressly recognized the relevance of past underwriting results in testing the reasonableness of "target" underwriting results and profit provisions, 401 Mass. at 286-287, and since underwriting profit allowance is one component used in setting rates,[8]

---

[5] He also determined that an additional exhibit, No. 72, provided "a supporting calculation" for one of the other exhibits and admitted it in evidence, a determination which was within his discretion.

[6] In view of the commissioner's admitted inability to articulate a reason for excluding the evidence, it is difficult to understand arguments that he should have done otherwise.

[7] The 1987 and 1988 proceedings involved a total of 122 days of hearings and 25,000 pages of record.

[8] The rates established by the commissioner are comprised of three components: (1) loss allowance (primarily from payment of claims); (2) expense allowance (nonclaim expenses); and (3) underwriting profit allowance (an estimate of profit from the business of selling insurance). *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.*, 389 Mass. 824, 826 (1983).

it follows that a consideration of the exhibits was relevant to the reasonableness of the rates. Indeed, after considering the information contained in the exhibits, the commissioner determined that the rates as previously set were not adequate and reasonable as required by G. L. c. 175, § 113B.

The Attorney General contends that the commissioner's subsequent increasing of the rates constitutes retroactive rate making or an impermissible "second look," relying on *Attorney Gen. v. Commissioner of Ins.*, 370 Mass. 791 (1976). There, we held that a direct appeal was the only way to challenge or correct any legal error committed by the commissioner in setting the rates, *id.* at 827, a position in keeping with the Legislature's repeal of the so-called second-look statute, which had permitted adjustments to the current year's rates when a shortfall was shown to have occurred in a prior year. In the present case, the commissioner has not adjusted the current year's rates to compensate for a demonstrated shortfall in a prior year. Instead, his analysis of the underwriting results he had previously not taken into account led to his determination that the 1987 and 1988 rates themselves did not meet the statutory standards.[9] As we have emphasized, the object of fixing the underwriting profit allowance is to establish "an allowance for underwriting profit which, when added to investment income, would yield a return on shareholder capital comparable to that of unregulated industries of comparable risk." *Massachusetts Auto. Rating & Accident Prevention Bureau v. Commissioner of Ins.*, 381 Mass. 592, 605 (1980). Having weighed the evidence of underwriting results and having reached the conclusion that the rates as set did not allow companies to earn a fair return, it was the commissioner's obligation to fix rates which would meet the statutory requirement of reasonableness and adequacy. In this regard, we do not substitute our judgment for that of the commissioner. *Massachusetts*

---

[9] The commissioner also properly excluded new and updated evidence offered by the bureau, recognizing that even though the proceedings constituted a statutory appeal, as distinguished from a "second look," the remand hearing nonetheless was not an opportunity to relitigate all issues or to consider wholly new evidence.

*Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.*, 389 Mass. 824, 828 (1983). This reasoning applies to the increases in both the 1987 and 1988 rates.

2. *Adequacy of the findings and basis in the evidence.* The Attorney General contends that the remand decision is not supported by substantial evidence, that the commissioner failed to make adequate findings, and that the commissioner excluded relevant evidence. Our inquiry, in reviewing the commissioner's decisions, is limited to "whether the rates have reasonable support in evidence." *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.*, 384 Mass. 333, 337 (1981). The commissioner is required to make findings which indicate the over-all basis for his decision. *Id.* We will not perform a de novo weighing of the evidence, and we give due weight to the commissioner's experience, technical competence, specialized knowledge, and discretionary authority. *Id.* See also *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.*, 389 Mass. 824, 828 (1983).

At the remand hearings, the commissioner considered the previously excluded exhibits and the testimony of experts sponsored by the Attorney General and by the bureau. There was ample evidence from which to conclude, as the commissioner did, that there was an "enormous disparity" between the 1985 and 1986 target underwriting profit allowance and the actual underwriting results in Massachusetts, and that the Massachusetts losses in those years (and in a ten-year average) were greater than country-wide losses for the industry. It was within the commissioner's discretion to conclude, based on this disparity and the fact that the same methods were used to establish the 1987 and 1988 rates, that the 1987 and 1988 rates were inadequate to provide an opportunity for a fair rate of return.

In examining the evidence to determine the cause of the inadequacy, the commissioner reasonably concluded that "misestimates" in loss allowances caused the deficiencies in preceding years, and that since the loss trending methodology was essentially the same from 1985 through 1988, the deficiencies would persist in 1987 and 1988 — making the rates as previously

set inadequate and unreasonable. This conclusion is based on the exhibits and testimony. Further testimony was offered suggesting methods to correct the deficiencies. The commissioner adopted the "loss ratio approach" suggested by the bureau — making it clear that this was an interim method to address a "unique situation" and not a decision to use the loss ratio method or otherwise change established methodology in future rate proceedings without a full-scale examination. On the evidence before him, the commissioner could rightly conclude that the loss ratio approach was a "reasonable method" to correct the inadequacy of the 1987 and 1988 rates. There was also evidence from the SRB and the Attorney General that not all of the disparity between actual and target loss ratios was caused by inadequate rates.[10] The commissioner therefore adjusted the increases suggested by a "mechanical application" of the loss ratio method.[11] While not quantified with "mathematical precision," the increases of 8.3% for 1987 and 7.7% for 1988 are sufficiently supported by the evidence and fall "within the range of the expert testimony, even though . . . not proposed by any single witness." *Medical Malpractice Joint Underwriting Ass'n* v. *Commissioner of Ins.*, 395 Mass. 43, 57 (1985). While more specificity may be generally desirable, we conclude that, in the difficult and unusual circumstances facing the commissioner on remand, more was not required.

Likewise, there is no error in the commissioner's exclusion of certain evidence. It was within the commissioner's discretion to exclude the testimony of Dr. Chang, the Attorney General's witness, on either of the grounds given — that of its being untimely filed *or* its being duplicative of other testimony. In any event, the commissioner indicated that, even if such testimony had been admitted, he would have discounted it as unconvincing and irrelevant. Therefore, this ruling presents no basis on which to disturb the commissioner's decision. Nor is there any merit to the Attorney General's challenges to the com-

---

[10] For example, the Attorney General argued that random fluctuations alone could account for three to five percent of the difference.

[11] The bureau submitted evidence that applying the loss ratio method resulted in increases of 13.8% for 1987 and 12.9% for 1988.

missioner's proper exercise of discretion in determining the *weight* to be given certain evidence.

The Attorney General also complains of the exclusion of actual investment results and evidence of "normative ratemaking," including testimony of 1988 claim frequency projections. The commissioner properly concluded that actual investment results are not part of the model used to establish the profit allowance provision and that since the Attorney General had not appealed the 1988 rate decision, he could not challenge at the remand hearings the exclusion of testimony from the original 1988 proceedings.

3. *Adequacy of notice.* The Attorney General also challenges the adequacy of the notice given by the commissioner, contending both that the commissioner was required by G. L. c. 175, § 113B, and by the commissioner's regulation, 211 Code Mass. Regs. § 77.04 (1987), to publish notice of the remand hearings, and that the notice of the scope of the remand hearings given to the Attorney General was inadequate. In addition, the Attorney General complains that the remand hearing schedule set by the commissioner deprived the Attorney General (and consumers) of a fair opportunity to prepare and be heard. We disagree.

The Attorney General argues for a literal interpretation of the c. 175, § 113B, requirement that premiums be set "after due hearing and investigation," and that the commissioner publish notice before "every such hearing." He further contends that, under the commissioner's regulations, the notice provisions of G. L. c. 175, § 113B, apply to "any hearing and investigation held to fix and establish . . . premium charges . . . ." 211 Code Mass. Regs. § 77.02 (1987). At the outset of the 1987 and 1988 rate setting procedures, the commissioner gave adequate, formal notice which complied with statutory requirements, so that interested persons could participate. The remand hearings did not constitute a new or original investigation, nor, as in *Fish* v. *Building Inspector of Falmouth*, 357 Mass. 774 (1970), cited by the Attorney General, did the remand hearings or decision relate to "different relief from that originally sought," *id.* at 775, or rest on "evidence *obtained*

after the close of the administrative proceeding" (emphasis added).[12] *Vitale* v. *Planning Bd. of Newburyport*, 10 Mass. App. Ct. 483, 487 (1980). We conclude that the commissioner was required only to notify the parties to the original hearings before reopening the hearings in compliance with the remand orders. Since the original proceeding had not culminated, the remand hearings did not constitute "new" proceedings requiring "new" notice. Cf. *Action on Smoking & Health* v. *Civil Aeronautics Bd.*, 713 F.2d 795, 800 (D.C. Cir. 1983).

We also conclude that the commissioner's letters to the parties provided adequate notice of the scope of the hearings. He informed them that the record would be reopened to admit the previously excluded evidence, and solicited their views regarding the effect on the rates of the underwriting results shown in the exhibits. The commissioner's letters of February 1 and February 3, 1988, defined the issues to be considered at the remand hearings.[13] Faced with a forty-five day deadline by which to file his decision on the 1988 rates, and the unusual circumstances of being directed to make findings on the excluded evidence in order to fix and establish the 1987 rates *in 1988*, the commissioner took actions that were reasonable and fair to all the parties. Similarly, while the schedule for hearings, arguments, and briefs was a tight one, we hold that, in the circumstances, it was adequate. Neither the abbreviated schedule for the proceedings on remand, nor the fact that notice was limited to those parties who already had participated in the extensive hearings, deprived consumers of their due process rights or opportunity to be heard.

4. *Right of Hanover to intervene.* While conceding that any evidence it would have presented at the original 1988 rate hearings would not have changed the result, and that no harm or prejudice to it exists, Hanover argues that we should decide its appeal of the commissioner's denial of its petition to intervene. We decline to do so.

---

[12] See note 9, *supra.*

[13] Written testimony filed by the bureau on January 21, 1988, also gave the Attorney General notice of the bureau's proposed evidence and arguments, at least as to the significance of the excluded evidence on the 1987 rates.

Since Hanover does not appeal the commissioner's remand decision, the question of its intervention in the 1988 proceedings is moot. Litigation ordinarily is considered moot when the party claiming to be aggrieved ceases to have a personal stake in its outcome. See *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 703 (1976), and cases cited. Nonetheless, it is within our discretion to decide an issue which is no longer important to the parties, where the question is one of public importance, is very likely to arise again in similar circumstances, and where appellate review could not be obtained before the question would again be moot. *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 782-783 (1984). This is not such a question. Compare *Blake* v. *Massachusetts Parole Bd.*, *supra* at 708, with *Brach* v. *Chief Justice of the Dist. Court Dep't*, 386 Mass. 528, 532-533 (1982). We agree with the commissioner that, while the issue of individual insurance company intervention is likely to arise again, it will not necessarily evade review. A prospective intervener might appeal the rate decision itself. In addition, we see no impediment in G. L. c. 175, § 113B, to the single justice's hearing an interlocutory appeal on the denial of a petition to intervene, since the jurisdiction of the single justice extends to "any action, order, finding or decision" of the commissioner in establishing rates pursuant to the statute.

These cases are remanded to the single justice for entry of judgment dismissing Hanover's appeal and affirming the 1987 and 1988 findings and decision of the commissioner.

*So ordered.*