BUILDING COMMISSIONER OF CAMBRIDGE & others[1] *vs.*
BUILDING CODE APPEALS BOARD & another.[2]

No. 92-P-276.

Middlesex. April 14, 1993. - July 1, 1993.

Present: DREBEN, KAPLAN, & PORADA, JJ

*Moot Question. Practice, Civil,* Moot case. *Building. Rent Control,* Removal of unit from market.

An appeal in an action for judicial review of a decision of the Building
Code Appeals Board, ordering the building commissioner of Cambridge
to issue a permit for the demolition of certain buildings, was rendered
moot when the buildings were razed pursuant to the permit [697-698];
no special circumstances existed to warrant this court's consideration of
issues relating to the removal from the housing market of rent-controlled dwelling units formerly within the buildings [698-699].

CIVIL ACTION commenced in the Superior Court Department on November 7, 1990.

The case was heard by *John P. Forte,* J., sitting under statutory authority.

*Patricia A. Cantor* (*Susan Hegel & Laura H. Yager* with her) for the plaintiffs.

*Paul J. Moriarty* for the intervener.

*Anthony C. Penski,* Assistant Attorney General, for Building Code Appeals Board, was present but did not argue.

KAPLAN, J. This was an appeal from a judgment of the Superior Court which affirmed an order of the State Building Code Appeals Board (State Appeals Board). The order directed the Cambridge building commissioner to issue a dem-

[1]City of Cambridge, Cambridge rent control board, and eight members of the Hampshire Place Tenants Union.
[2]Donna Lyons, intervener.

olition permit for buildings at 189 and 191 Hampshire Street, Cambridge.

Upon the argument of the appeal before us, counsel disclosed that, pending this appeal, the building commissioner had in fact issued the demolition permit in accordance with the decisions of the State Appeals Board and the Superior Court, and the buildings had been demolished accordingly. Thus the question arose whether the appeal should be considered moot.

Upon consideration of the supplemental briefs of the parties discussing the question, we do now dispose of the appeal as being moot.

In brief digest, the situation was as follows. After a report of an inspection by a board of survey (see G. L. c. 143, § 8) finding the buildings unsafe in various respects, with sundry violations of the Building Code,[3] the building commissioner might well have been prepared to issue a demolition permit: repairs, he believed, would be possible but economically prohibitive. He declined to grant the permit, however, because of the position of the Cambridge rent control board (Cambridge Board) that demolition could not lawfully proceed unless and until the Cambridge Board granted a "removal" permit, i.e. a permit to remove from the market the twenty-two controlled units in the buildings.

The owner filed an appeal with the State Appeals Board from the negative decision of the building commissioner. Parties to the proceedings before the State Appeals Board, besides the owner and the building commissioner, were the Cambridge Board and tenants of the buildings. A full administrative record was made. The State Appeals Board found that the buildings were unsafe and that in the circumstances the owner could elect not to repair but to demolish. Further, where demolition was justified because the premises were unsafe, there was no room for a prerequisite of a "removal" permit from the Cambridge Board. So the building commissioner was ordered to issue the demolition permit.

---

[3]Two other professional inspections reached similar conclusions.

Upon judicial review of the decision of the State Appeals Board, a judge of the Superior Court held that there was substantial evidence to support the State Appeals Board's decision. The judge then examined critically the Cambridge Board's contention and concluded, with analysis particularly of § 114.1 of the State Building Code (780 Code Mass. Regs. § 114.1 [1980]) and § 8.44.050 of the Cambridge Code, that the contention failed. (The interpretive question involved is set out in the Appendix to this opinion.)

After noting its appeal from the judgment of the Superior Court, the Cambridge Board applied to the judge to stay the judgment pending appeal. The judge allowed the stay on the condition the tenants vacate the buildings by a given date, September 12, 1991: the judge stated, "This court is concerned with the safety of the tenants and public." The Cambridge Board then sought an unconditional stay from a single justice of the Appeals Court; the stay was denied on September 4, 1991. The Cambridge Board then requested an unconditional stay from a single justice of the Supreme Judicial Court; it was denied on September 19, 1991. The building commissioner issued the demolition permit on August 4, 1992, and the buildings were demolished.

With the demolition of the buildings pursuant to the demolition permit, the controversy appears to be at an end, but some argument is made for applying "exceptions" to the rule of mootness.

It is suggested that this is a case where the issue is one "capable of repetition, yet evading review," *Wolf* v. *Commissioner of Pub. Welfare*, 367 Mass. 293, 298 (1975). The Cambridge Board in its supplemental brief describes the issue herein to be whether a removal permit is required "where no code enforcement authority found that demolition was required or recommended on public health or safety grounds." This statement implies that, had such a formal finding been made, no additional removal permit would be required. On that assumption, little substance was left to the appeal itself, for the seriousness of the safety situation ran through all the proceedings, and the Cambridge Board seems to be simply

engaged in word-chopping — making a fetish of some formal phrase.

If the issue — however formulated — should present itself sometime in the future, it will not likely evade proper review. The present case was apparently seen by the State agency and by judges on all three tiers to be so strong as not to warrant a stay; hence demolition followed. Future cases may present situations of varying strengths, and stays will be forthcoming as appropriate.

Again, there is argument, seeking to invoke another "exception," that the present parties have a continuing stake in this particular controversy. See *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 707 (1976). We are referred to the Cambridge removal permit ordinance, which imposes fines for the wrongful removal of controlled units (Cambridge Code § 8.44.090 A [1987]), and it is suggested that the present owner remains in peril of this ordinance because it might be decided ultimately that a removal permit was needed. Surely this is a fictitious, not a genuine concern: here the owner acted under a demolition permit actually ordered by competent authority on the basis that it was the only permit required. The idea of exacting the penalty in these circumstances seems bizarre.

Then it is suggested that if the owner should in the future decide to build on the vacant site, the Cambridge Board, asserting that the demolition was unlawful because no removal permit had been obtained, might demand that the owner secure, anew, a removal permit, as a condition of being able to claim that the new building was exempt from rent control. The problem is for the future, is highly contingent, and will best be answered if and when it becomes actual.[4]

---

[4]Compare the discussion in the *Blake* case, 369 Mass. at 706 n.9: "In the particular case, with the action at the appellate level, economy of a sort might be served by going to a decision if it were anticipated that similar issues might arise in the future. Cf. *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943). But predictions of the nature of future litigation and the applicability of precedents are notoriously infirm; and time and circumstances of decision are not indifferent factors in the devel-

In conformity with practice where a case becomes moot on appeal, we "vacate the [judgment] appealed from with a notation that the decision is not on the merits, and remand the case to the Superior Court with directions to dismiss the [complaint]." *Reilly* v. *School Comm. of Boston*, 362 Mass. 689, 696 (1972).

*So ordered.*

## APPENDIX.

Section 114.1 of the State Building Code (780 Code Mass. Regs. § 114.1 [1980]) provides that "[t]he building commissioner . . . shall examine . . . all applications for permits . . . within thirty (30) days after filing. . . . If he is satisfied that the proposed work conforms to the requirements of this code and all pertinent law applicable thereto, he shall issue a permit."

Cambridge Code § 8.44.050 (1987) provides that "[i]n deciding whether to grant a permit under this chapter [entitled "Rent Control"], the [rent control] [b]oard shall consider: "A. The benefits to the persons sought to be protected by the Act and by this chapter; B. The hardships imposed on the tenants residing in the unit proposed to be removed, including any mitigating provisions made by the applicant; and C. Any aggravation of the shortage of decent rental housing accommodations, especially for families of low and moderate income and elderly people on fixed incomes, which may result from the removal."

The Cambridge Board has contended that the words of the Building Code — "*conforms to the requirements of this code and all pertinent law applicable thereto*" — embrace as "pertinent law" the cited Cambridge Code provision for issuance of permits in regard to rent control, including a permit which may be granted for removal from the market of the controlled units in the building to be demolished.

The State Appeals Board and the Superior Court judge consider that, to be "pertinent" law "applicable thereto," i.e., applicable to the "requirements of this code" (the Building Code), the law must deal with safety matters[1]; whereas the Cambridge Code provision deals generally with the issuance of permits regarding rent control and has little, if any, relation to safety. The Cambridge Board apparently reads "pertinent," etc., in a

---

opment and outcome of law. Thus the supposed economy may here be readily cancelled out by other factors."

[1] It may be noted that the Cambridge traffic, police, and fire departments agreed with the application to demolish.

broad sense to include law having a relation to the Building Code even if it does not distinctly deal with safety.

There is further argument that, if the Cambridge Board's view were adopted, the Board, by witholding a removal permit in a case like the present, could as a practical matter force the owner as a last resort to make extravagantly uneconomical repairs — even though the Board has no direct authority to order an owner to make repairs.